UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU, on behalf of
themselves and all others similarly situated,

Case No. 3:10-cv-00960-ST

ORDER

        Plaintiffs,

    v.

JACK IN THE BOX, INC., a corporation
of Delaware,

        Defendant.

HAGGERTY, District Judge:

        This is a putative class action brought by current and former employees of Jack in the

Box restaurants for alleged violations of the minimum wage and overtime provisions of the

Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Oregon's wage and hour

statutes.  Plaintiffs, on behalf of themselves and others similarly situated, allege three categories

of violations that have caused them to be paid less than minimum wage or to not receive

1 -- ORDER

overtime wages: (1) wrongful deductions for the Workers' Benefit Fund (WBF) assessment; (2) wrongful deductions for shoes; and (3) failing to pay for certain break periods. Plaintiffs originally filed this action in August of 2010, and following significant discovery and motion practice, the matter is now ready for possible class certification.

Magistrate Judge Stewart held oral argument on plaintiffs' motion to certify the class [109] on October 22, 2012. On January 28, 2013, Judge Stewart filed her Findings and Recommendation (F&R) recommending that this court conditionally certify the FLSA claims under § 216(b) based on wrongful deductions for the WBF assessment and shoe classes, and certify the proposed Federal Rule of Civil Procedure (FRCP) 23(b)(3) classes for the Oregon WBF and shoe claims. The Magistrate Judge did not find that any of the break classes should be certified. Both parties filed extensive objections to the F&R, and the case was referred to this court. This court has reviewed the record, the parties' initial briefing, and the supplemental briefing submitted in response to two recent appellate decisions. Oral argument was deemed unnecessary. For the following reasons, this court adopts the F&R [158] in its entirety.

I.    **STANDARD**

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may not decide a motion "to dismiss or to permit maintenance of a class action."[1]  Instead, the magistrate judge may prepare a report

---

[1] Defendant contends that the present motion for class certification is a "non-dispositive" or "pretrial" motion that should be reviewed under FRCP 72(a)'s clear error standard. Def.'s Resp. at 2-3. However, the statute explicitly excludes class certification motions from the pretrial motions on which a magistrate judge receives deference. *See* 28 U.S.C. § 636(b)(1)(B); *see also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 412 (D. Or. 2002) (noting, in a proposed FLSA collection action, that "[a] decision to certify a class is considered a 'dispositive motion' for purposes of Rule 72").

with recommendations on a class motion, and then refer the motion to the district court. 28

U.S.C. § 636(b)(1)(B). When a party objects to any portion of a Magistrate Judge's Findings and

Recommendation, the district court must make a *de novo* determination of that portion of the

Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus.

Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). The court may "accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

636(b)(1). Unchallenged portions of the Findings and Recommendation will be adopted unless

clear error appears on the face of the record. *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206

(9th Cir. 1974).

## II.    BACKGROUND

The F&R detailed the factual history of this matter and summarized the legal standards

relevant to the issues in this case. These summaries are adopted. This court will only briefly

discuss background details to provide context and as necessary to this court's ruling.

Defendant is a nation-wide restaurant chain with at least 557 stores. During 2010,

defendant was in the process of selling its Oregon stores to independent franchise operators. By

March 29, 2010, it had sold its last Oregon store involving any of the named plaintiffs, and had

essentially no employees in Oregon after September 30, 2011.

Plaintiffs were all employed by defendant and started at minimum wage positions. Some

of the plaintiffs were promoted to "team leader" positions, which are also hourly positions, but

have management responsibilities that include ensuring that the employees take their statutory

breaks. Some plaintiffs were also promoted to salaried management positions.

1.    **WBF assessment**

The WBF is an Oregon program that provides benefits to injured workers and is funded

by an assessment paid by every employer and employee to the State of Oregon based on the

number of hours worked by that employee.  All of defendant's nonexempt hourly employees,

including team leaders, are subject to the same WBF rate.  The WBF assessment rate must be

divided evenly between the employer and the employee.  Plaintiffs assert that defendant deducted

a disproportional amount from its employees' wages because its withholding rate remained

unchanged even though Oregon reduced the WBF assessment rate.  For example, since 2003,

defendant continued to deduct 1.8 cents per hour from its employees' wages even though

the WBF assessment rate was less than 3.6 cents per hour.  Plaintiffs also allege that these

deductions did not differentiate between hourly and salaried employees.  This payroll error only

affected defendant's employees in Oregon.  The error was corrected on February 10, 2012.

2.    **Shoes**

For safety reasons, plaintiffs were required to wear slip-resistant shoes or slip guards over

their own shoes while at work.  The parties dispute whether slip-resistant shoes are considered

part of their required uniform.  Slip guards were kept at the restaurants for employees to use, but

using the guards was considered a temporary solution and the employee was expected to obtain

approved shoes in the future.  These shoes could be purchased through a few approved retailers,

although at sometime after 2000, defendant required its employees to purchase their shoes from

Shoes for Crews.  It is unclear whether employees could also use slip-resistant shoes that they

already owned.  Plaintiffs contend that defendant required its employees to purchase shoes from

Shoes for Crews, and encouraged them to pay for the shoes through a payroll deduction.

Payment via payroll deduction resulted in a discount up to $5.00 per pair of shoes for the employee and a $2.00 "rebate" for defendant for each pair of shoes ordered. Defendant usually deducted the cost of the shoes over four of the employee's paychecks. The record is inconsistent regarding whether employees filled out authorization forms for the payroll deductions.

3.    **Meal Breaks**

To keep track of its employees' work and break time, defendant used two timekeeping methods during plaintiffs' employment: (1) Kronos; and (2) Jack's Timekeeping. Kronos only allows the employee to punch in or punch out. If the time between punches was twenty minutes or less, the period was deemed a "rest break" and was paid. If the break time between punches was over twenty minutes, then that time period was considered an unpaid meal break. Under the Jack's Timekeeping method, the employee must designate the purpose of his or her punch, e.g. to begin a shift, start a break, end a break, start a meal, end a meal, etc. If the employee punches "Start Break," the first twenty minutes of the break are paid, but any additional time is unpaid. If the employee punches "Start Meal," the entire time between that punch and the "End Meal" punch would be unpaid. Unlike Kronos, the Jack's Timekeeping system also prevents early clock-ins from a break or meal by requiring a manager to authorize the early punch.

The parties agree that any break under twenty minutes was properly paid, and any break over thirty minutes was not required to be paid. The break periods at issue in this case concern breaks lasting longer than twenty minutes but less than thirty minutes. Plaintiffs allege that defendant trains its mangers to bring employees back from their breaks when the restaurant is busy. Plaintiffs contend that these "interrupted breaks" should be paid in accordance with the

law and defendant's On Duty Meal Policy. However, plaintiffs allege that defendant improperly failed to pay for breaks that lasted longer than twenty minutes but less than thirty minutes.

## III.    ANALYSIS

At the outset, this court finds no reason to reject the Magistrate Judge's conclusions regarding dual certification or jurisdiction. Accordingly, this court will only address the parties' objections to the F&R as to: (1) the Magistrate Judge's use of the "intermediate approach" for the FLSA claims; and (2) her recommendations regarding certification of the three classes of claims. Defendant does not object to the certification of the WBF claims, but asserts that the shoe and break claims are too individualized for class treatment.

### 1.    Intermediate approach

Traditionally, when an employee seeks to maintain a collective action under 29 U.S.C. § 216(b), the court applies a two-step analysis to determine whether the additional employees are similarly situated. *McElmurry v. US Bank Nat. Ass'n*, Civil No. 04-642-HU, 2006 WL 3908536, *2 (D. Or. Dec. 8, 2006). In the first "notice" step, the court determines whether notice of the action should be given to potential class members, and only requires "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at *3 (citations omitted). Once conditionally certified at the notice stage, the case proceeds through discovery. *Id.* Then at the second step, usually precipitated by a defendant's motion to decertify the collective, the court engages in a more fact-intensive determination as to whether the putative class members are similarly situated to the named representatives. *Id.*

Occasionally, however, courts have integrated the two steps into an intermediate approach when substantial discovery has already been completed. *Bouaphakeo v. Tyson Foods,*

*Inc.*, 564 F. Supp. 2d 870, 895 (N.D. Iowa 2008).  Under the intermediate approach, the court

determines whether conditional certification is appropriate under the lenient notice standard, and

then uses the more onerous decertification standard to account for all of the discovery completed

by the parties. *Id.*  This is the approach adopted by the Magistrate Judge in this case.  F&R at 37.

She initially found that all three claims met the minimal burden for conditional certification, but

then concluded that the meal break claims could not survive the second stage analysis.

Plaintiffs object to the Magistrate Judge's decision to use the second stage criteria and

assert that the analysis should have ended at the notice stage.  Plaintiffs contend that discovery

has not been conducted on all of defendant's affirmative defenses, the potential class members, or

defendant's policies outside of Oregon.

Although some discovery remains incomplete, plaintiffs have conducted substantial

discovery for almost two years on the class certification issues.  During those two years, plaintiffs

undertook "exhaustive discovery" regarding:

> the merits of defendant's payroll practices with multiple interrogatories, two sets
> of requests for production of documents, resulting in production of almost
> 30,000 documents and meta-data, 297 requests for admission, depositions
> involving the testimony of over 25 managers, and several third-party subpoenas
> resulting in the production of another 100,000 or so documents.

Opinion and Order [114] at 4.  Additionally, defendant has deposed all of the named plaintiffs.

Based on this substantial record, this court agrees that the use of the intermediate approach is

appropriate to account for the significant facts already known to the parties and to efficiently

advance the progress of this case.  This court has previously adopted a Magistrate Judge's use of

the second stage criteria where substantial discovery had been completed even though some

discovery issues remained outstanding.  *See McElmurry*, 2006 WL 3908536 at *3.

7 -- ORDER

2.      **Certification of Shoe claims**

Defendant contends that certification is improper because it has not violated the FLSA as a matter of law.  Defendant raises the same arguments regarding the merits of plaintiffs' claims that were discussed in the F&R, including that the shoes are not a required uniform, but "other facilities" under the FLSA.  In either event, the court's ultimate decision on this issue will apply equally to all class members, and the class will win or lose based on that determination. Similarly, many of defendant's affirmative defenses can be resolved on a class-wide basis.  At this time, the possibility of individualized issues regarding whether the employees signed authorization forms for the payroll deductions for the cost of shoes does not overwhelm the common factual and legal questions of the proposed class.  If these individual issues exist after further proceedings, the court could amend the "wrongful deduction" subclasses as discussed by the Magistrate Judge, or decertify that subclass.  *See* Fed. R. Civ. P. 23(c)(1)(C) (noting that the court may alter or amend its class certification orders before final judgment).

Alternatively, defendant asks that the FLSA shoe classes be limited to Oregon.  This court finds no basis to limit the classes to Oregon at this time.  The parties agreed to limit the class certification discovery to Oregon, so plaintiffs have not had an opportunity to obtain out-of-state discovery on these claims.  Nevertheless, plaintiffs have presented evidence that defendant's shoe policy is companywide and not specific to any region.  Additionally, defendant has not demonstrated how the 2011 settlement for California employees in *Frederick et al. v. Jack-In-The-Box, Inc. et al.* will significantly affect issues of manageability in this case.  If some California employees that may be barred by the prior settlement seek to opt-in to this action, the parties may litigate that issue at a later time.

8 -- ORDER

### 3.      Meal break claims

The Magistrate Judge recommended conditional certification of the meal break claims at the notice stage, but found that individual factual issues precluded certification of the FLSA claims at the second stage, as well as the Oregon claims under FRCP 23.  She also excluded any employees who worked at the franchisees' restaurants from the potential classes.  Plaintiffs object to both findings.

### A.      Exclusion of franchisee's employees

Plaintiffs object to the Magistrate Judge's decision to exclude employees of the franchisees as putative plaintiffs for the meal break collective.  Plaintiffs contend that defendant is a "joint employer" of these employees because it requires its franchisees to use its proprietary timekeeping software and perform the same calculations for breaks at all of its store locations.  However, as the Magistrate Judge noted, plaintiffs had not alleged in their Second Amended Complaint that defendant was a joint employer of the franchisees' employees, and plaintiffs' belated motion to amend their complaint to add such an allegation had previously been denied.  F&R at 40.  Plaintiffs do not dispute these findings.  Although plaintiffs take issue with the Magistrate Judge's alternative finding that adding the franchisees' employees would be premature because discovery had not been conducted on this issue, plaintiffs' failure to plead "joint employer" status is a sufficient basis to exclude the franchisees' employees.  Moreover, because this court agrees that the FLSA and Oregon break claims should not be certified, there is no reason to add these employees to this action.

\\\

\\\

9 -- ORDER

### B.    Rejection of contract claim

In the F&R, the Magistrate Judge found that "plaintiffs may not recover damages related to meal breaks based on a breach of contract theory." F&R at 65. Plaintiffs object to this conclusion on the grounds that they properly pled a contract action and that defendant required all plaintiffs, not just Christina Luchua, to sign the On Duty Meal Policy. Although plaintiffs submitted nine On Duty Meal Policy agreements for all named plaintiffs with their objections, this additional evidence does not alter the fact that plaintiffs failed to plead a breach of contract claim. In their Second Amended Complaint, plaintiffs' only reference to the On Duty Meal Policy is during the statement of common facts in which they allege that defendant "promised the employee that if their work prevented them from receiving a full meal period, they would be paid for all of that time. But JACK IN THE BOX didn't honor those agreements, or the law." Sec. Am. Compl. ¶ 16. Plaintiffs' seven claims for relief, however, do not mention any contractual theory of recovery under the FLSA or Oregon law. *Id.* at ¶¶ 30-50. Additionally, plaintiffs never asserted a contract theory for their FLSA claims in their class certification briefing. This court agrees that plaintiffs cannot now state a claim based on alleged breaches of the On Duty Meal Policy.

### C.    Decision to not certify meal break claims

The Magistrate Judge found that the FLSA and Oregon meal break claims were too individualized for certification under § 216(b) or FRCP 23. In their objections, plaintiffs clarify that their meal break claims allege "that, as a matter of law, [defendant] both contracted with its employees to pay them, and was required by federal law to pay them, for any break of less than 30 minutes." Pls.' Obj. at 20. For the reasons already discussed, plaintiffs cannot assert a

contract basis for their FLSA meal break claims. Accordingly, only plaintiffs' claim that defendant was legally required to pay its employees for breaks less than thirty minutes remains.

The FLSA requires a minimum wage and payment for overtime hours, but it does not require employers to provide specific meal or rest periods. *California Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1043 (E.D. Cal. 2009) ("[N]othing in the FLSA or its implementing regulations requires an employer to provide meal periods."). However, if the employer provides a "bona fide meal period"—which is not counted as "hours worked" under the FLSA—the employee must be "completely relieved from duty. 29 C.F.R. § 785.19(a). According to the regulations, thirty minutes is ordinarily long enough for a bona fide meal period, but a shorter period may be sufficient under "special conditions." *Id.*; *see Alvarez v. IBP, Inc.*, 339 F.3d 894, 913 (9th Cir. 2003) (comparing state law that requires thirty minute meal breaks with the FLSA, which "permit[s] truncation of the thirty-minute period in certain contexts"). Therefore, contrary to plaintiffs' assertion, this court cannot clearly conclude that defendant was required to pay its employees for any break less than thirty minutes.

As noted in the F&R, individual inquiries will be necessary to determine whether the employee's break between twenty and thirty minutes was a bona fide meal break, whether the shortened break was long enough under special conditions, and why the employee clocked in early. *See also Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 681 (W.D. Pa. 2011) (noting that individual issues regarding whether a meal break was "bona fide" supported decertification of the putative meal break class). Plaintiffs, both as employees and in management positions, testified that they occasionally clocked in early from breaks when the restaurant was busy or someone needed help on the floor. However, some plaintiffs could not

11 -- ORDER

recall why they clocked in early.  Some plaintiffs also recalled that their manager would edit the employee's time card, or try to provide the employee with an extra break later in the shift.  Because individual factual issues among the proposed meal break classes predominate, certification is inappropriate under § 216(b) or Rule 23.

The court has reviewed the remaining unchallenged portions of the F&R and finds no clear error on the face of the record.

## CONCLUSION

For the reasons provided, the Findings and Recommendation [158] is adopted in its entirety.  Plaintiffs' Motion for Class Certification [109] is GRANTED IN PART AND DENIED IN PART as follows:  Plaintiffs' proposed FLSA Workers' Benefit Fund and Shoe Collectives and Subcollectives are conditionally certified under § 216(b), and plaintiffs' proposed Rule 23(b)(3) Oregon Workers' Benefit Fund and Shoe Classes and Subclasses are certified.  Jon M. Egan and his law firm are appointed as class counsel, and the named plaintiffs are appointed as class representatives.

IT IS SO ORDERED.

Dated this ___ day of April, 2013.

Ancer L. Haggerty
United States District Judge