Douglas S. Parker, OSB No. 821017
dparker@littler.com
Jennifer Warberg, OSB No. 035472
jwarberg@littler.com
Don H. Stait, OSB No. 105134
dstait@littler.com
LITTLER MENDELSON, P.C.
121 SW Morrison, Suite 900
Portland, OR 97204
Tel:503.221.0309
Telephone:    503.221.0309
Fax No.:      503.242.2457

Attorneys for Defendant
JACK IN THE BOX INC., a Corporation of Delaware

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JESSICA GESSELE, ASHLEY GESSELE, NICOLE GESSELE, TRICIA TETRAULT and CHRISTINA LUCHAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JACK IN THE BOX INC., a Corporation of Delaware,<br><br>Defendant. | Case No. 3:10-cv-00960-BR<br><br>REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................ 1

II. DISCUSSION .................................................................................................... 2

    A.  PLAINTIFFS' FAILURE TO FILE A CONSENT BEFORE THE
        STATUTE OF LIMITATIONS RAN REQUIRES DISMISSAL OF THE
        FLSA CLAIMS .......................................................................................... 2

        1.  Introduction ................................................................................... 2

        2.  The FLSA Statute of Limitations Runs Until A Consent Is Filed ............ 3

        3.  PLAINTIFFS' DUAL CAPACITY ARGUMENT DOES NOT
            SAVE PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS ............. 7

    B.  THERE ARE NO TRIABLE FACT ISSUES ABOUT WHEN
        PLAINTIFFS' CLAIMS ACCRUED ................................................................ 9

        1.  Legal Standard ................................................................................ 10

        2.  Plaintiffs' Alleged Injuries Were Known When They Filed Suit ............ 11

        3.  Plaintiffs' Final Paydays Occurred Shortly After Their Last Days
            Of Employment with Defendant ...................................................... 13

        4.  Information Learned During The February 2012 Depositions Did
            Not Add Causes Of Action That Were Not Already Plead ................... 13

    C.  THERE ARE NO TRIABLE ISSUES CONCERNING EQUITABLE
        EXCEPTIONS TO THE STATUTE OF LIMITATIONS
        REQUIREMENT ....................................................................................... 15

        1.  Introduction ................................................................................... 15

        2.  Any Equitable Theory Is Limited to Equitable Tolling or Equitable
            Estoppel ......................................................................................... 15

        3.  Plaintiffs Present No Triable Issues For Applying Equitable
            Tolling .......................................................................................... 17

            a.  Plaintiffs Cannot Establish Equitable Estoppel Since They
                Have Counsel ....................................................................... 17

# TABLE OF CONTENTS
## (CONTINUED)

PAGE

b.    Plaintiffs' Argument Concerning FLSA Posters Does Not Create any Triable Fact Issues ...................................................... 18

c.    There Are No Triable Issues Of Fact Concerning Plaintiffs' Efforts to Discover Defendant's Statute of Limitations Defense .............................................................................................. 19

4.    PLAINTIFFS HAVE PRESENTED NO TRIABLE ISSUES FOR APPLYING EQUITABLE ESTOPPEL .................................................. 21

a.    Introduction ................................................................................ 21

b.    Plaintiffs Fail To Establish That They Reasonably Relied On Any Action By Defendant When They Failed To File Consents ..................................................................................... 22

c.    Plaintiffs Fail To Establish That Defendant Engaged In Any Wrongful Or Deceptive Act That Caused Them Not To Comply With the Consent Requirement ............................... 24

D.    PLAINTIFFS HAVE NOT OPPOSED DEFENDANT'S MOTION TO DISMISS THE STATE LAW CLAIMS FOR JURISDICTIONAL REASONS ................................................................................................ 27

III.    CONCLUSION .......................................................................................... 28

# TABLE OF AUTHORITIES

PAGE

## CASES

*Adams v. Inter-Con Security Systems, Inc.*,
    242 F.R.D. 530 (N.D. Cal. 2007)..............................................................................19, 20, 21

*Allen v. Atlantic Richfield Co.*,
    724 F.2d 1131 (5th Cir. 1984) ....................................................................................6

*Anderson v. Montgomery Ward & Co.*,
    852 F.2d 1008 (7th Cir. 1988) ....................................................................................6

*Arias v. U.S. Serv. Indus., Inc.*,
    1994 WL 193901 (D.D.C. 1994), *rev. on other grounds* 80 F.3d 509 (D.C. Cir. 1996).......6, 7

*Arias, Vaicaitiene v. Partners In Care, Inc.*,
    2005 WL 1593053 (S.D.N.Y. July 6, 2005) ....................................................................7

*Arnold v. City of Lakewood*,
    No. 3:10-cv-05907 RBL (WD Wash. January 11, 2012) ....................................................13

*Atkins v. Union Pacific R.R.*,
    685 F.2d 1146 (9th Cir. 1982) ..................................................................................23, 27

*Bechler v. Macaluso*,
    2010 U.S. Dist. LEXIS 48094 (D. Or. May 14, 2010) ......................................................10

*Bonilla v. Las Vegas Cigar Co.*,
    61 F.Supp.2d 1129 (D. Nev. 1999)..........................................................................3, 4, 6

*Cahill v. City of New Brunswick*,
    99 F.Supp.2d 464 (D.N.J. 2000) ................................................................................5

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d
    650 (1988)............................................................................................................27

*Cancilla v. Ecolab, Inc.*,
    No. C 12-03001, 2013 U.S. Dist. LEXIS 48553 (N.D. Cal. April 3, 2013) ...............3, 4, 7, 16

*Chavez v. Lumber Liquidators, Inc.*,
    No. 09-4812, 2011 U.S. Dist. LEXIS 27105 (N.D. Cal. Mar. 2, 2011)...................................3

i

# TABLE OF AUTHORITIES

### (CONTINUED)

PAGE

*Clarke v. American Commerce Nat'l Bank,*
977 F.2d 1533 (9th Cir. 1992) ..............................................................20

*Duncan v. State,*
Civil Case No. 05-1747-KI, DKT #185, p. 14 (Lead Case, Consolidated Cases, D.
Oregon March 14, 2007)..............................................................16, 17, 22, 23

*Faust v. Comcast Cable Comm'ns Mgmt LLC,*
WL 5587291 *7 (D.Md. Oct. 9, 2013) ..............................................................9

*Frye v. Baptist Mem. Hosp., Inc.,*
495 Fed. Appx. 669 (6th Cir. Aug. 21, 2012) ..............................................................4, 6, 7

*Gomez v. Vernon,*
255 F.3d 1118 (9th Cir. 2001) ..............................................................20

*Guerrero v. Gates,*
442 F.3d 697 (9th Cir. 2003) ..............................................................27

*Hall v. Guardsmark, LLC,*
2012 WL 3580086 (W.D. Pa. Aug 17, 2012) ..............................................................5

*Harkins v. Riverboat Servs., Inc.,*
385 F.3d 1099 (7th Cir. 2004) ..............................................................4

*Hively v. Allis-Chalmers Energy, Inc.,*
WL 5936418 (W.D. Pa. Nov. 5, 2013) ..............................................................5

*Int'l Surplus Lines Ins. Co. v. Comm'l Union Ins. Co.,*
52 F.3d 333, 1995 U.S. ..............................................................12

*James v. Claiborne,*
2009 WL 994951 (W.D.La. April 13, 2009) ..............................................................7, 11

*James v. Fenske,*
Case No. 10-cv-02591, 2012 U.S. Dist. LEXIS 22663 (D. Colo. March 1, 2012)..............................................................11

*Kennedy v. Allied Mut. Ins. Co.,*
952 F.2d 262 (9th Cir. 1991) ..............................................................13

*Ketchum v. City of Vallejo,*
523 F.Supp.2d 1150 (E.D. Cal. 2007)..............................................................3

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Kim v. Dongbu Tour & Travel, Inc.*,
   2013 WL 5674395 ................................................................................5

*Knepper v. Rite Aid Corp.*,
   675 F. 3d 249 (3rd Cir. 2012) ...........................................................5

*Lindell v. Gen. Elec. Co.*,
   267 P.2d 709 (Wash. 1954).................................................................4

*M.N.O. v. Magana*,
   2006 WL 559214 (D. Or. March 6, 2006) ........................................23

*Macias v. IK Retail, Inc.*,
   2007 WL 61914 (S.D.Fla. Jan. 5, 2007) ............................................7

*Mateo v. Auto Rental Co., Ltd*,
   240 F.2d 831 (9th Cir. 1957) ...............................................................3

*Miller v. Kashani*,
   2012 U.S. Dist. LEXIS 132679 (C.D. Cal. Aug. 17, 2012)............10, 18

*Mowdy v. Beneto Bulk Transp. Co.*,
   2008 WL 901546 (N.D. Cal. March 31, 2008)..................................19

*Naton v. Bank of California*,
   649 F.2d 691 (9th Cir. 1981) ........................................................16, 22

*Nelson v. Unified Grocers, Inc.*,
   2011 U.S. Dist. LEXIS 151483 (D. Or. July 18, 2011)......................28

*Nerseth v. United States*,
   29 WH Cases 639, 642-43 (Cl. Ct. 1989) .........................................11

*O'Donnell v. Vencor Inc.*,
   466 F.3d 1104 (9th Cir. 2006) ..........................................................27

*Ochoa v. Pearson Educ., Inc.*,
   2012 U.S. Dist. LEXIS 3802 (D.N.J. Jan. 12, 2012) ..........................4

*Partlow v. Jewish Orphan's Home*,
   645 F.2d 757 (9th Cir. 1981) ........................................................15, 16

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Patraker v. NYC Environment Council*,
    9 WH Cases2d 394 (S.D.N.Y. 2003) ........................................................17, 18, 19

*Richmark Corp. v. Timber Falling Consultants*, Inc.,
    126 F.R.D. 58 (D. Or. 1989) .....................................................................20

*Rodriguez v. Farm Stores Grocery, Inc.*,
    No. 02-2245 (S.D. Fla. Jan. 23, 2003) ........................................................7

*Santa Maria v. Pacific Bell*,
    202 F. 3d 1170 (9th Cir. 2000) ................................................................10

*Smith v. Cent. Sec. Bureau, Inc.*,
    231 F.Supp.2d 455 (W.D.Va. 2002) ........................................................8, 9

*Stallcop v. Kaiser Found. Hosp.*,
    820 F2d 1044 (9th Cir. 1987) ................................................................16

*Stallcop v. Kaiser Founds. Hosps.*,
    820 F.2d 1044 (9th Cir.), *cert. denied*, 484 U.S. 986 (1987)................................16, 17, 18, 22

*Symczyk v. Genesis HealthCare Group*,
    656 F.3d 189 (3rd Cir. 2011) ................................................................5

*Syntrix Biosystems, Inc. V. Illumina, Inc.*,
    Case No. C10-5870 BHS., 2012 U.S. Dist. LEXIS 12676 (WD Wash. Jan 30, 2013) ...........17

*Tate v. Showboat Marina Casino Partnership*,
    2002 WL 31253843 (N.D. Ill. Oct. 2, 2002)........................................................5, 6

*Thomas v. Talyst*,
    No. C07-202-JLR, 2008 U.S. Dist. LEXIS 15112 (W.D. Wa. February 28, 2008) ......3, 6, 8, 9

*Titchenell v. Apria Healthcare Inc.*,
    2012 WL 3731341 (E.D. Pa. Aug. 29, 2012) ................................................................5, 19

*Tompkins v. Union Pacific Railroad Co.*,
    No. 2:12-cv-01481, 2012 U.S. Dist. LEXIS 142638 (E.D. Cal. Oct. 1, 2012)................16, 22

*United States v. Brooks*,
    163 F.R.D. 601 (D. Or. 1995) ................................................................20

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Vargas v. General Nutrition Centers, Inc.,*
  2012 WL 5336166 ...........................................................................5

*Westinghouse Elec. v. James Stewart, Co.,*
  336 F.2d 777 (9th Cir. 1964) ......................................................22

*Whipkey v. R.R. Donnelley & Sons Co.,*
  2006 WL 840371 (N.D. Ohio March 28, 2006) ....................7

*Woodward v. FedEx Freight E., Inc.,*
  250 F.R.D. 178 (M.D.Pa. 2008)...................................................5

## STATUTES

29 U.S.C. § 216(b) .............................................................................2

## OTHER AUTHORITIES

29 CFR §531.35 ................................................................................15

Federal Rules of Civil Procedure Rule 11 ......................13

Federal Rules of Civil Procedure Rule 56(c)...................25

# I.  **INTRODUCTION**

Plaintiffs make three primary arguments in opposition to Defendant's summary judgment motion on the signed consents issue.  They claim that they did not need to file consents because they are named plaintiffs.  Failing that, they claim that the statute of limitations did not begin to run until they had more details about their wrongful deduction claims.  Finally, they claim the statute of limitations should be equitably tolled.  None of these arguments is availing.  Summary judgment should be granted and the Fair Labor Standards Act ("FLSA") claims and collective action should be dismissed.

Defendant's motion established, as a matter of law, the FLSA collective action in this case should be dismissed because a statutorily-mandated consent by a named plaintiff was not timely filed.  Plaintiffs' brief ignores the strong line of federal court decisions disallowing collective actions when consents are lacking, including several from District Courts within this Circuit.  In fact, Plaintiffs cite only a 20-year old decision that denied summary judgment where the statute of limitations ran without a signed consent from a named plaintiff.  They otherwise try to cobble a contrary argument from mostly Third Circuit cases that do not address the issue presented here.  In fact, much of the case law cited by Plaintiffs has been rejected as a basis for denying the very kind of motion brought here.  Instead, all federal courts that modernly have squarely addressed the issue have concluded that an FLSA collective action cannot proceed where a named plaintiff has not filed the necessary consent before the statute of limitations expires, a conclusion required by the clear language of the statute.

Plaintiffs attempt to sidestep applicable law by arguing that their claims never accrued until the parties were well into discovery.  They ignore their own sworn testimony that they knew from Jessica Gessele's consultation with counsel before filing suit that they had illegal deduction claims based on the shoe purchase program and a tax discrepancy.  The statute of

Page 1 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

limitations is triggered when a party knows enough to claim injury and who to sue, and does just that.  Plaintiffs' argument that the statute is tolled until finer details are learned during discovery is simply not the law.  A contrary finding could effectively do away with the statute of limitations defense.

Plaintiffs also continue to argue for equitable modification of the statute of limitations. They claim a litany of procedural events, real or imagined, excuses their failure to have filed consents.  Sorely lacking, though, in their 35-page opposition brief is any evidence that any plaintiff or their experienced counsel was in any way misled by any single action by Defendant. In fact, they do not even claim they relied on anything Defendant has done.  Nor can they.  The fact remains, as it has all along, that Plaintiffs' consents were not filed as they should have been, and no amount of finger pointing, blame shifting or angry exhortation changes that simple fact. Plaintiffs have had experienced counsel from the outset and because of that, the statute of limitations cannot be tolled or disregarded on an equitable basis.

Finally, Plaintiffs have ignored the request in this motion that should the FLSA claims be dismissed, that the Court decline jurisdiction over remaining state law claims.  In the absence of any opposition, that part of Defendant's motion also should be granted.

## II. <u>DISCUSSION</u>

### A.    PLAINTIFFS' FAILURE TO FILE A CONSENT BEFORE THE STATUTE OF LIMITATIONS RAN REQUIRES DISMISSAL OF THE FLSA CLAIMS.

#### 1.    Introduction

Plaintiffs acknowledge in this case that "the text of the FLSA states that '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'  29 U.S.C. § 216(b)".  DKT #131, p. 59.  As Defendant set out in its brief at DKT #175, a number of federal

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

court decisions hold on the basis of this statutory language that the FLSA statute of limitations is not tolled for party plaintiffs in a collective action unless and until a signed consent has been filed.  These cases are mostly ignored in Plaintiffs' opposition memorandum,[1] and they do not cite to a single case that contradicts them.  In fact, with the single exception of a 1992 case that has not been followed by any other court, Plaintiffs have not cited to any authority that excuses a statute of limitations violation where a signed consent has not been filed.

### 2.    The FLSA Statute of Limitations Runs Until A Consent Is Filed.

While the Ninth Circuit has not yet directly addressed the issue, it gave a strong signal in *Mateo v. Auto Rental Co., Ltd*, 240 F.2d 831, 835 (9th Cir. 1957) that it will indeed enforce the consents requirement.  The court explained that the statutory requirement is "a special rule, necessary in class action procedures to insure integrity thereof; and not to permit unauthorized litigation to exist." citing *Burrell v. La Follette Coach Lines, D.C.,* 97 F.Supp. 279 (E.D. Tenn. 1951), where claims of all named plaintiffs who had not filed consents were dismissed.

Several District Courts in this Circuit have dismissed FLSA collective claims because, as here, no named plaintiff had timely filed a consent.  *Cancilla v. Ecolab, Inc.,* No. C 12-03001, 2013 U.S. Dist. LEXIS 48553 (N.D. Cal. April 3, 2013); *Chavez v. Lumber Liquidators, Inc.*, No. 09-4812, 2011 U.S. Dist. LEXIS 27105, at *8 (N.D. Cal. Mar. 2, 2011); *Thomas v. Talyst*, No. C07-202-JLR, 2008 U.S. Dist. LEXIS 15112 (W.D. Wa. February 28, 2008), *Ketchum v. City of Vallejo*, 523 F.Supp.2d 1150 (E.D. Cal. 2007); *Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1133 (D. Nev. 1999).

In *Thomas,* Judge Robart disagreed with the argument made by Plaintiffs here that consents are redundant or unnecessary:

---

[1]    Astonishingly, of the 14 cases cited and discussed in Defendant's brief for the consents issue, Plaintiffs discuss only three, the *Cahill, Perella* and *Vivone* decisions, at DKT #261, p. 22, and then only in support of their proposition that they might be allowed to continue on an individual basis if the collective claims are dismissed.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

The requirement to file a consent with the court, or sign the complaint, is "hardly onerous or burdensome." *Id.* at 1139.[2]  Regardless, wasteful or not, wise or not, it is not for the courts to rewrite unambiguous statutory language.  *Id.*; *see also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975) ("Any argument that the inclusion of the [FLSA] consent requirement undercuts the broad remedial purposes of the ADEA should be made to the legislature and not to the courts.");  *Lindell*, 267 P.2d at 715[3] ("Far be it from this court to attempt to rewrite an act of Congress. . . .  [W]e feel that Congress meant just what it said, and we have no difficulty in understanding its language.  This is a collective or class action.").

In *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099 (7th Cir. 2004), the Seventh Circuit reached the same conclusion.  The trial court had dismissed the overtime claims of 18 of the 21 named plaintiffs in a FLSA collective action because no written consents by them to join in the suit had been filed with the court before the statute of limitations expired.  On appeal, plaintiffs' counsel argued that since all 18 were actually named as plaintiffs in the complaint and participated in discovery, their consent to be parties could be presumed such that the failure to file written consents for them was a harmless technicality.  The Seventh Circuit disagreed because "[t]he statute is unambiguous:  if you haven't given your written consent to join the suit, or you have but it hasn't been filed with the court, you're not a party."  *Id.* at 1101.

*Cancilla v. Ecolab, Inc., supra,* decided less than a year ago, includes among its authority several of the decisions cited in Defendant's opening brief, *Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669 (6th Cir. Aug. 21, 2012) , and *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099 (7th Cir. 2004).  *Cancilla* also refers to a case cited in Plaintiffs' brief, *Ochoa v. Pearson Educ., Inc.,* 2012 U.S. Dist. LEXIS 3802, at *7 (D.N.J. Jan. 12, 2012), , (DKT #261, p. 21) which held that collective action claims "cannot be rescued by the 'relation back' doctrine."

Every single one of the foregoing decisions from the Ninth Circuit are ignored by Plaintiffs, but their direction is clear:  the FLSA collective claims should be dismissed for lack of timely signed consents.

Plaintiffs instead rely on a line of irrelevant decisions that mostly are from the Third Circuit.  Their argument begins with a confusing discussion of *Knepper v. Rite Aid Corp.*, 675 F.

---

[2]    *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129 (D. Nev. 1999)
[3]    *Lindell v. Gen. Elec. Co.,* 267 P.2d 709, 715 (Wash. 1954).

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

3d 249 (3rd Cir. 2012), a decision that has nothing to do with whether a signed consent must be filed to toll the statute of limitations in a collective action.  *Knepper* deals with jurisdictional and preemption issues where FLSA and state law claims are asserted in the same action.  In its broad review of historic differences between Rule 23 and FLSA collective actions, *Knepper* also relates a history of the consent requirement in an FLSA collective action.  However, *Knepper* does not contradict the holdings in the cases cited by Defendant that in the absence of a signed consent, a collective action must be dismissed once the statute of limitations has run.

Plaintiffs turn next to cases from the Third Circuit, headlined by *Symczyk v. Genesis HealthCare Group*, 656 F.3d 189 (3rd Cir. 2011), and argue that "named employee plaintiffs' collective claims are commenced with the filing of the Complaint."  DKT #261, p. 16.  None of the cases string cited[4] or discussed[5] here address or concern the issue presented by Defendant's motion:  whether the lack of a signed consent before the statute of limitations has run requires dismissal of a collective action.

The irrelevance of *Symczyk* and its Third Circuit ilk to the instant issue was made clear another case relied upon by Plaintiffs, *Tate v. Showboat Marina Casino Partnership*.  Plaintiffs rely on a decision in that case reported at 2002 WL 31253843 (N.D. Ill. Oct. 2, 2002) for the proposition, similar to that in *Symczyk*, that the plaintiff "need not file a separate signed consent to join the lawsuit that he himself filed."  (DKT #261, p. 19).  This indeed was the court's initial conclusion, but it was significantly modified upon reconsideration, 2002 U.S. Dist. LEXIS 21143, at *9 (N.D. Ill. Oct. 30, 2002).  In the new order, the court held that until a signed party

---

[4]      *Hively v. Allis-Chalmers Energy, Inc.*, WL 5936418 (W.D. Pa. Nov. 5, 2013); *Kim v. Dongbu Tour & Travel, Inc.,* 2013 WL 5674395, *3 (D.N.J. Oct. 16, 2013; *Vargas v. General Nutrition Centers, Inc.,* 2012 WL 5336166, at *4 (W.D. Pa. Oct. 26, 2012; *Titchenell v. Apria Healthcare Inc.*, 2012 WL 3731341, *2 n.1 (E.D. Pa. Aug. 29, 2012); *Hall v. Guardsmark, LLC,* 2012 WL 3580086, *7 (W.D. Pa. Aug 17, 2012)
[5]      *Woodward v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 193 (M.D.Pa. 2008) addresses whether putative class member claims may be equitably tolled and does not address the question presented here.  *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464 (D.N.J. 2000) disallowed claims of named plaintiffs other than on an individual basis as none had consented within the limitations period.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

plaintiff consent is filed, the statute of limitations continues to run.  The court explained that while one reason for filing a consent is to notify the defendant of the particular individual's participation in the action, another purpose "is to mark the commencement of the action for purposes of the statute of limitations."  *Id.*  The court's explanation included the following authority:

> *Salazar v. Brown*, No. G87-961, 1996 WL 302673, at *10 (W.D. Mich. Apr. 9, 1996) ("The statute makes clear that the filing of a consent may come after the filing of the complaint, but a collection action is not *commenced for purposes of the statute of limitations* until both the complaint and the claimant's individual written consent are filed."); *SonguMbriwa v. Davis Mem'l Goodwill Indus.*, 144 F.R.D. 1, 2 (D.D.C. 1992) ("Until a plaintiff, even a named plaintiff, has filed a written consent, she has not joined in the class action, *at least for statute of limitations purposes.*").

*Id.*  The *Tate* court concluded that "regardless whether signed consents are necessary for named plaintiffs to **join** a representative action, Section 256 makes clear that even for named plaintiffs signed consents are required to mark the commencement of the action."  *Id.*

Other cases Plaintiffs rely on also miss the mark.  *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir. 1984) was a single plaintiff case and not a collective action.[6]  *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008 (7th Cir. 1988) was an age discrimination case, not an FLSA action.[7]  *Anderson* and another case cited by Plaintiffs, *Arias v. U.S. Serv. Indus., Inc.*, 1994 WL 193901 (D.D.C. 1994), *rev. on other grounds* 80 F.3d 509 (D.C. Cir. 1996) , were rejected as authority for the consents issue recently in *Frye v. Baptist Memorial Hospital Inc.*,

---

[6]  Plaintiffs rely on *Allen* for its statement that "parties named in a suit, who have hired a lawyer to file a complaint on their behalf, have clearly indicated their consent to suit."  *Allen* was rejected as persuasive authority in two cases from this circuit:  *Thomas v. Talyst*, and *Bonilla v. Las Vegas Cigar Co.*, *supra*, both of which held that without a signed consent, the FLSA collective action must be dismissed upon expiration of the statute of limitations. See discussion *infra*.  The sole case cited by Plaintiffs as allowing named plaintiffs to proceed in a collective action despite lack of signed consents (based on *Allen*), the 20-year old decision in *Arias v. U.S. Serv. Indus., supra,* has itself not had any coattails and, rather has been rejected by the only Circuit court, *Frye,* to consider it.

[7]  In fact, the first *Tate* ruling rejected Anderson as a basis for ruling on the missing FLSA consent issue:  "*Anderson*, therefore, does not excuse the Proposed Plaintiffs' failure to file individual consents to join the lawsuit."  2002 WL 31253843 at *3.  This part of the first ruling did not change upon reconsideration.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

495 Fed.Appx. 669, 675-76 (6th Cir. 2012).[8]  In other cases, the court denied a motion to dismiss in *Macias v. IK Retail, Inc.*, 2007 WL 61914 (S.D.Fla. Jan. 5, 2007) because a named plaintiff *had* filed a consent.  *Whipkey v. R.R. Donnelley & Sons Co.,* 2006 WL 840371 (N.D. Ohio March 28, 2006) is equally inapposite as it dealt with timeliness of opt-ins submitted by unnamed individuals.  *James v. Claiborne*, 2009 WL 994951 (W.D.La. April 13, 2009) noted that several named plaintiffs who were granted individual default judgments against the employer had also filed consents, but further noted that in this instance they had not needed to do so.  *Rodriguez v. Farm Stores Grocery, Inc.*, No. 02-2245 (S.D. Fla. Jan. 23, 2003) also is not helpful as it ruled only that named plaintiff's need not go through the opt-in process.

In summary, Defendants have cited to a large number of decisions, including five from within this Circuit, that squarely hold that if the statute of limitations runs without a signed consent having been filed by a named Plaintiff, the FLSA collective action must be dismissed. The briefing process on this motion yields but one court – 20 years ago in *Arias v. U.S. Serv. Indus. Inc,* that indicated the result might be different.  In the only case to have cited *Arias* for this proposition, *Frye v. Baptist Memorial Hosp.*, the Sixth Circuit roundly rejected it.  The Northern District for California more recently applied the *Frye* holding in *Cancilla v. Ecolab Inc.,* thus joining the strong chorus of decisions that have dismissed collective actions under the circumstances presented here.

### 3.    PLAINTIFFS' DUAL CAPACITY ARGUMENT DOES NOT SAVE PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS.

Plaintiffs argue that even if the collective action is dismissed for want of timely consents, they should be allowed to proceed with their individual claims.  The case on which they rely for

---

[8]    The only other reported decision to have considered *Arias, Vaicaitiene v. Partners In Care, Inc.,* 2005 WL 1593053 (S.D.N.Y. July 6, 2005) did not address the issue here.  Rather, it concluded that a lack of a signed consent did not disqualify a named plaintiff from acting as a class representative.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

this argument, *Smith v. Cent. Sec. Bureau, Inc.,* 231 F.Supp.2d 455 (W.D.Va. 2002) was rejected by the Western District of Washington in *Thomas v. Talyst, Inc., supra*. Both the *Smith* and *Thomas* decisions underscore that the question presented whether Plaintiffs have proceeded on a dual basis is fairly factual but nonetheless may be decided on summary judgment.

As Judge Robart noted in *Thomas*, "Mr. Thomas never made known his intentions to convert his collective action for overtime pay into an individual action until the three-year statute of limitations for willful FLSA violations expired." *Id.* at *11. The same is true here as well. The complaint, in every iteration, states in the caption that is a "Collective and Class Allegation Complaint." DKT ##1, 34, 65. While all purport to be brought by named plaintiffs "suing on behalf of themselves and all others similarly situated," *Id.*, none of the complaint versions contains individualized claims. Rather all claims are styled as styled as "collective and class allegations. Moreover, while they claim in their opposition that the "common facts" sections of their complaints reflects an individualized intent, the lead in for this part of the Second Amended Complaint states: "Plaintiffs base this collective and class action on three categories of violations . . . " DKT #65 at p. 3, ¶6. And Defendant disagrees that Plaintiffs have otherwise signaled an intent to proceed on an individualized basis; certainly nothing in their certification briefing ever states such an intent. See DKT ##113, 131.

Quite frankly, nothing in the complaint, as it has been amended, or in the conduct of the case to date, reflects any appreciable difference from how the *Thomas* case proceeded. Judge Robart reviewed the history of that case and stated:

> There is no question that Mr. Thomas intended for this case to proceed as a FLSA collective action. Mr. Thomas filed his complaint, entitled "FLSA Collective Action," on "behalf of himself and other employees and former employees similarly situated to him for overtime compensation and other relief under the FLSA." Complaint (Dkt. # 1) ¶ 2. The complaint contains a "Class Facts" section and alleges that "Defendant violated the overtime provisions of the FLSA . . . by

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

directing, suffering or permitting work by class members in excess of 40 hours per week for which they were not paid overtime," and that "Defendant's violations were willful, thereby entitling plaintiff and members of the proposed class to a three-year statute of limitations." *Id.* ¶¶ 8-12, 14-15. "[I]ndividually and on behalf of the class," Mr. Thomas sought three forms of relief: (1) "Court-approved notices to putative class members pursuant to 29 U.S.C. § 216(b);" (2) "Certification of a collective action pursuant to 29 U.S.C. § 216(b);" and (3) overtime and other damages. *Id.* at 3. Mr. Thomas reaffirmed the collective action nature of his claims in the joint status report and discovery plan (Dkt. # 6) and his initial disclosures (Dkt. # 7). With respect to discovery, he referred to Section 216 certification of the FLSA class members and stated that "[d]epending on the number and position held of those who opt in, more depositions may be required." Joint Status Rep. ¶ 5. He asserted a wholly individual FLSA action for the first time in response to Talyst's motion for summary judgment and, even then, the captions on his papers read "FLSA Class Action." Resp. (Dkt. # 13) at 1; Roe Decl. (Dkt. # 14) at 1; Thomas Decl. (Dkt. # 15) at 1; Supp. Authority and Resp. (Dkt. # 19) at 1.

*Id.* at *5-6. So, too here have Plaintiffs failed before now to indicate that they were proceeding on any basis other than as a collective or class action. As in *Thomas,* their occasional reference in their complaints to "plaintiffs and class members" or even saying "individually and on behalf of the class," was not held in *Thomas* to be evidence of an individualized intent.[9] For the same reasons reached in *Thomas*, the FLSA claims simply cannot be allowed to proceed on an individual basis.

## B.   THERE ARE NO TRIABLE FACT ISSUES ABOUT WHEN PLAINTIFFS' CLAIMS ACCRUED

Plaintiffs attempt to avoid the effect of the unfiled consents with an unpersuasive argument that the statute of limitations trigger date should be pushed into 2012. Under the

---

[9]      In fact, *Faust v. Comcast Cable Comm'ns Mgmt LLC*, WL 5587291 *7 (D.Md. Oct. 9, 2013), a case cited by Plaintiffs for the proposition that the Court should examine the caption of the complaint and its allegations, DKT #261 at p. 21, also considered *Smith* but rejected the notion that inserting the word "individually" into the complaint saved dual capacity status:

> A mere recitation in pleadings of the phrase "individually and on behalf of all others similarly situated," absent any further indication in the Complaint or subsequent filings of an intention to proceed in a dual capacity, is not sufficient to put the employer and the Court on notice of an individually-filed action.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

applicable law, the limitations period commences once a plaintiff knows or should know that he

has experienced a compensable injury and knows who the responsible party is.  No admissible

evidence has been submitted to show that the Plaintiffs, mostly members of the same family,

lacked sufficient knowledge of their claims when they filed suit in August 2010.  That finer

details for their claims may have come into better focus during depositions is no basis for

adjusting the limitations date to February 2012.

The fact of the matter is that the Plaintiffs filed a complaint on their claims and proceeded

to litigate.  This is not an instance as contemplated by "discovery rule" cases where the Plaintiffs

did not file a complaint because they had no reason to believe they needed to.  Rather, they knew

from meetings with counsel, which preceded their filing of the original complaint in August

2010, that they would pursue, and did pursue, claims for allegedly unlawful payroll deductions.

## 1.    Legal Standard

The standard for when a limitations period commences was stated in *Bechler v.*

*Macaluso*, 2010 U.S. Dist. LEXIS 48094 (D. Or. May 14, 2010):  a plaintiff need not know for

certain that each element of a claim exists or be able to identify a particular theory of recovery

for claims to accrue.  Rather, the limitations period commences once the plaintiff knows harm

has occurred and that a claim exists:

> [T]he rule [that the time starts running when plaintiff knew or should have
> known] delays the running of the limitations period only until the plaintiff knows
> or should know that some harm has been incurred and that a claim exists."  This is
> an objective inquiry.  A plaintiff does not need to identify a particular theory of
> recovery or know to a certainty that each element of the claim exists.

*Id*. at *41-42 (cites omitted); s*ee also Santa Maria v. Pacific Bell*, 202 F. 3d 1170 (9th Cir. 2000)

(overruled on other grounds) (plaintiff need not have marshaled every conceivable item of proof

he might eventually be able to use at trial for the limitations period to commence); *Miller v.*

*Kashani*, 2012 U.S. Dist. LEXIS 132679 (C.D. Cal. Aug. 17, 2012) (the limitations period

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

begins when the plaintiff knows he has been hurt and who inflicted the injury**)**.

*James v. Fenske,* Case No. 10-cv-02591, 2012 U.S. Dist. LEXIS 22663 (D. Colo. March 1, 2012), cited by Plaintiffs, embraces the same inquiry:  the FLSA statute begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  The instant case differs greatly from *James* in that the Plaintiffs here filed suit, and then learned additional details relevant to their claims.  And even if the fact of a lawsuit already filed were not a difference maker, the plaintiffs in *James* still lacked knowledge that they had been "injured."  There, whether their time was improperly compensated, was unknown to any plaintiffs until a memo exchange with a manager.

Plaintiffs filed suit in August 2010, and that act, alone signifies that they had sufficieint knowledge that there were deduction issues related to the slip resistant shoe program as well as to taxes.  They knew money was being taken out of their paychecks and they believed it to be legally improper.  The situation here is much closer to that presented in another case concerning FLSA claim accrual, *Nerseth v. United States*, 29 WH Cases 639, 642-43 (Cl. Ct. 1989).  There, the plaintiffs' knowledge that overtime was not being paid triggered the statute of limitations.

## 2.    Plaintiffs' Alleged Injuries Were Known When They Filed Suit.

When Plaintiffs filed their complaint on August 13, 2010, they believed they had been injured by Defendant's pay deduction practices.  Jessica Gessele met with Mr. Egan and from that learned that "too much taxes were taking [sic] out" and that she had a "claim related to Shoes for Crews deductions."  Declaration of Douglas S. Parker, Ex. A (J. Gessele Dep. p. 31).  Nicole Gessele learned about these issues when her sister Jessica asked her to join the suit.  Parker Dec. Ex. B (N. Gessele Dep. p. 17).[10]  Similarly, Tricia Luchau had concerns over shoe

---

[10]    Nicole is an original plaintiff, so her knowledge precedes the August 13, 2010 filing date.  She testified:

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

deductions and a high tax deduction, and she filed wage claim paperwork with the Oregon

Bureau of Labor and Industries ("BOLI") during summer 2010.  Parker Dec. Ex. C (Luchau Dep.

pp. 30-34, 49.)[11]

Plaintiffs' declarations do not generate material issues of fact sufficient to overcome the

law or their deposition testimony that they had knowledge of injury sufficient to have filed suit.

For one thing, they are not properly before this court as they contain only electronic signatures.

As a declaration by a Non-Registered User (that is, anyone other than an attorney or authorized

pro se litigant, LR 100-4) requires production upon request of an original signed statement, LR

100-11, Jack in the Box requested the signed declarations from Class Counsel.  Parker Dec. Ex.

D.  Original signed statements were not provided and, rather, Mr. Egan provided documents

indicating he developed the declarations form telephone conversations.  Parker Dec. Ex. E.  In

the absence of signed originals, the electronically signed declarations are inadmissible for the

same reasons that parties may not submit unsigned declarations.  *Int'l Surplus Lines Ins. Co. v.*

*Comm'l Union Ins. Co.,* 52 F.3d 333, 1995 U.S. App. LEXISA 8975, *15 (9th Cir. 1995);*

*Arnold v. City of Lakewood,* No. 3:10-cv-05907 RBL (WD Wash. January 11, 2012).

---

Q Okay. What do you understand your claims in this lawsuit to be about?
A The taxes, the Shoes For Crews, and not paying for the under 30-minute lunches.
Q And can you kind of describe more about the claim that you describe as "taxes"? What do you
mean by that?
A As I understand, they were supposed to be taking out taxes from our checks, and we were
supposed to be paying half and Jack In The Box was supposed to be paying half. And Jack In The
Box wasn't paying half. They were paying less and we were paying more.
Q When did you first learn about that claim?
A I believe when my sister asked me to join.
Q And how about the Shoes For -- the shoes claim. What -- can you expand on that a little bit, what
your understanding is about that claim?
A That they weren't supposed to be taking out of our payroll, deducting it from our payroll.
Q When did you first learn about that claim?
A I think at the same time.
Q When Jessica asked you to --
A Yeah.
Q -- if you wanted to join the lawsuit?

[11]      Defendant formally requested such information and Luchau testified that she may have given BOLI claim
documentation to Mr. Egan, Ex. C (Luchau Dep. p. 34), but it has not been produced. *Id.* (Luchau Dep. p. 49).

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

Even if the declarations are legitimate, it is still the case that a party opposing summary judgment cannot change sworn deposition testimony by affidavit or declaration. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). To the extent the unsigned declarations seek to change the several plaintiffs' testimony concerning their knowledge of their alleged injuries, they should be ignored.

### 3.    Plaintiffs' Final Paydays Occurred Shortly After Their Last Days Of Employment with Defendant.

Plaintiffs try to create an issue of fact because, they claim, there is no evidence of their final pay checks and hence, their final paydays.[12] While any issue here is easily resolved by referring to their complaint allegations, see e.g. DKT #34, p. 6, ¶18, the Declaration of Wendy Sanderlin provides the pay stubs that show that each plaintiff's final paychecks were issued on the following dates:

> Ashley Gessele – 12/26/08
> Nicole Gessele – 3/20/09
> Jessica Gessele – 11/23/09
> Christina Luchau – 3/30/10
> Tricia Tetrault  - 7/11/08

### 4.    Information Learned During The February 2012 Depositions Did Not Add Causes Of Action That Were Not Already Plead.

In short, the Plaintiffs knew by the time they filed suit in August 2010 that they believed they had claims against Jack in the Box related to the shoe and tax deductions. Indeed, their counsel was required by Rule 11 of the Federal Rules of Civil Procedure not to proceed unless such claims "are warranted by existing law" and the "factual contentions" upon which they are based "have evidentiary support or . . . will have evidentiary support after a reasonable opportunity for further investigation or discovery." Plaintiffs knew enough to sue for the very

---

[12] Plaintiffs' objection at note 2 of their brief (DKT #261, p. 10) to the Stubblefield affidavit is not well taken. Mr. Stubblefield clearly was providing information about employment dates, a seemingly uncontested issue, and did so as a corporate custodian. His certification of employment dates was hardly an exercise is relating essential facts.

Page 13 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

claims, still active in this lawsuit now, back in 2010 and their contradictory declarations now cannot be used to evade the statute of limitations.

Moreover, evidence they discovered during the extensive February 2012 depositions in San Diego did not generate new causes of action for them – they continued on with the same claims that the payroll deductions for slip resistant shoes violated the FLSA, as well as Oregon law, the same as they had been alleging from the beginning of the lawsuit.  DKT #1, p. 4, ¶7 (Defendant "willfully deducted the price of said shoes from the pay of its employees without meeting the statutory requirements to do so.")  The same is true with their other deduction claim; they asserted from the beginning that "the evidence available to date strongly suggests additional wage and hour violations have taken place."  DKT 1, p. 5, ¶12.  They then asserted on a collective basis that "as a result of the nonpayments and deductions indicated herein," they were not paid federal minimum wage or overtime.  DKT 34, p. 6, ¶19.a and b.

Liability under the FLSA may be triggered where a deduction for shoes, for instance, results in a "profit" to the employer.  Plaintiffs contended long before depositions were taken in February 2012 that Jack in the Box was getting a financial benefit from its shoe vendors in the form of workers' compensation indemnity.  For instance, they stated in an April 15, 2011 filing that they had "discovered from other sources[13] that Shoes for Crews pays the first $5,000 of any workers compensation claim by an employee who slips while wearing Shoes for Crews–brand

---

[13]    Plaintiffs pointed to such "other sources" in a recent pleading, DKT #245, pp. 23-24 where they refer to a 2005 article at www.qsrweb.com/article_print/109931Slip-Slidin-Safety which includes information about the indemnity offered by shoes For Crews:

> Shoes for Crews also invented the guarantee against slipping and falling injuries. If your company has an account with Shoes for Crews and an employee slips or falls while wearing their shoe, they will reimburse your company up to $5,000 per incident.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

shoes." DKT #31, p. 17.[14]  Their contention that the rebates, discovered during the February

2012 deposition of Gene James, are somehow new information that should trigger a new statute

of limitations, is wrong.  Call it a rebate, "kickback"[15] or whatever, the payments from Shoes for

Crews are essentially no different in the deduction analysis than is the indemnity offered by shoe

vendors that they had long known about.  In either event, Plaintiffs knew enough to file suit

claiming the deductions were wrong.

## C.    THERE ARE NO TRIABLE ISSUES CONCERNING EQUITABLE EXCEPTIONS TO THE STATUTE OF LIMITATIONS REQUIREMENT.

### 1.    Introduction.

Plaintiffs' argument for equitable modification of the statute of limitations has been part

of a consistent effort to avoid this motion since its filing last May.  Defendant cannot help but

note, in response to Plaintiffs' general plea of fairness, that they and their counsel seek to reap

large dollars from Defendant due to an inadvertent computer omission that affected pay by a

penny or two an hour and legal technicalities over payroll deductions for shoe purchases.  Yet,

when Defendant rightly defends that Plaintiffs' filings are legally insufficient and should be

dismissed, Plaintiffs are quick to fly the flag of equity and fairness.

Much of the equity argument depends on a premise that Plaintiffs are faultless.  But

consents were not filed and there simply is no evidence that Plaintiffs were prevented from

complying with the statute by any action of Defendant.  Call it what it really is:  ignorance of the

legal requirement or a mistake, but Plaintiffs are not faultless because they have from the outset

had counsel experienced in FLSA collective actions.[16]

---

[14]    The statement at DKT #31 certainly impeaches the statement made by Class Counsel at DKT #261, p.261, p. 12 that "Plaintiff's counsel did not discover these . . . medical indemnity benefits until Gene James . . . . blurted them out during his February 6, 2012 deposition."
[15]    29 CFR §531.35 prohibits a "kickback" by an employee; the rebates Plaintiffs claim to be "kickbacks" are from Shoes For Crews.
[16]    Plaintiffs argue that on the basis of *Partlow v. Jewish Orphan's Home*, 645 F.2d 757 (9th Cir. 1981), they

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

**2.      Any Equitable Theory Is Limited to Equitable Tolling or Equitable Estoppel.**

Plaintiffs seek a generalized application of equity in this instance, arguing essentially that

equity can come in various packages:

> Various equitable exceptions to the statute of limitations have been called by
> different names by different courts according to the particular facts of the cases in
> which they were applied, such as (inter alia) waiver, estoppel, tolling, fraudulent
> concealment, continuous accrual, continuing violation, laches, unclean hands, *in
> pari delicto*, and the discovery rule.

DKT #261, p. 26.

This may be true in "different courts," but it is not in this Circuit.  As noted in *Tompkins*

*v. Union Pacific Railroad Co.*, No. 2:12-cv-01481, 2012 U.S. Dist. LEXIS 142638, at *5 (E.D.

Cal. Oct. 1, 2012), the "Ninth Circuit recognizes two equitable doctrines:  (1) equitable tolling

and (2) equitable estoppel.  *See Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981).";

s*ee also, Stallcop v. Kaiser Found. Hosp.*, 820 F2d 1044 (9th Cir. 1987) ("There are two types of

equitable modification, equitable tolling and equitable estoppel.")  These theories were explained

in *Stallcop*:

> Equitable tolling requires that Stallcop was excusably ignorant of the limitations
> period.  *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981). Stallcop
> admitted that she consulted three lawyers within the six-month statutory period.
> She therefore gained the "means of knowledge" of her rights and can be charged
> with constructive knowledge of the law's requirements.  [cite omitted] Equitable
> estoppel focuses on the defendant's actions.  There must be evidence of an
> improper purpose by the defendant, or of the defendant's actual or constructive
> knowledge that its conduct was deceptive.  *Naton*, 649 F.2d at 696.

Judge King provided additional explanation in *Duncan v. State*, Civil Case No. 05-1747-KI,

---

are faultless because any error here was by their attorney.  There is an important difference between that situation
and here: the putative plaintiffs in *Partlow* had no attorney/client relationship with class counsel before opting in,
whereas here, the named plaintiffs have been represented by Mr. Egan since as early as April 2010.  DKT #205
Since the lawyer in *Partlow* did not represent the putative class members when he impermissibly solicited their opt-
in consents, application of equitable tolling made sense.  To do so here, however, would gut the authorities
discussed in this brief, including a Ninth Circuit decision issued after *Partlow*, that refuse to apply the equitable
tolling theory once a plaintiff has counsel. *Stallcop v. Kaiser Founds. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.), *cert.
denied*, 484 U.S. 986 (1987).  Moreover, at least one District Court in this Circuit has held that failure of counsel to
file a consent does not support an equitable tolling argument.  *Cancilla v. Ecolab, Inc.*, *supra*.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

DKT #185, p. 14 (Lead Case, Consolidated Cases, D. Oregon March 14, 2007):

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim.  In contrast, the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.

In light of the limitation to these two clearly defined equitable theories of tolling and estoppel, Plaintiffs should not be permitted to rely on loose notions of waiver, fairness and the like, and rather must be held to the proof requirements of these two theories.

### 3.    Plaintiffs Present No Triable Issues For Applying Equitable Tolling.

As stated in *Duncan*, Plaintiffs must show that "despite the exercise of all due diligence" they were "unable to obtain vital information bearing on the existence of his claim."  Indeed, Plaintiffs agree that they must show they were "excusably ignorant of the accrual of [their] claims."  DKT #261, p. 29.  However, their arguments for equitable tolling, i.e. that they were "excusably ignorant," fall far short of establishing a triable issue of fact.

### a.    Plaintiffs Cannot Establish Equitable Estoppel Since They Have Counsel.

Any arguable application of equitable tolling disappears upon a plaintiff's retention of counsel.  *Syntrix Biosystems, Inc. V. Illumina, Inc.,* Case No. C10-5870 BHS., 2012 U.S. Dist. LEXIS 12676 *12 (WD Wash. Jan 30, 2013) ("'once a claimant retains counsel, tolling ceases because *she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements.*' *Leong,* 347 F.3d at 1123 (citing *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997))") (emphasis added); s*ee also Stallcop v. Kaiser Founds. Hosps*., 820 F.2d 1044, 1050 (9th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987) (no equitable tolling where plaintiff consulted counsel during period).

Presence of counsel also factored in the court's analysis in *Patraker v. NYC Environment*

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

*Council*, 9 WH Cases2d 394 (S.D.N.Y. 2003):

> Once the plaintiff hired a lawyer to advise him concerning his employment situation, the means of knowledge of his rights were at his disposal.  Surely he knew that he had been working more than forty hours a week for over 15 years.  If he failed to ask the attorney his rights in that circumstance, he cannot be said to have acted with due diligence.  He cannot hide behind the allegedly limited scope of his retainer of the attorney for the simple reason that the limitation of the scope reflects his own lack of due diligence.  The FLSA claim therefore will be dismissed.

*Patraker* cites to a number of authorities, including *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987) (no equitable tolling where plaintiff consulted counsel during period).  *See also Miller v. Kashani*, 2012 U.S. Dist. LEXIS 132679 (C.D. Cal. Aug. 17, 2012), where the court disallowed equitable tolling since "Plaintiff's own federal and state court filings clearly establish he had access to the courts to pursue his claims throughout the time the limitations period was running."

   **b.**  **Plaintiffs' Argument Concerning FLSA Posters Does Not Create any Triable Fact Issues.**

   Plaintiffs rely on a demonstrably untrue contention that Jack in the Box did not have FLSA posters at its Oregon stores and accordingly, the statute of limitations should be ignored.  As stated in the Declarations of Alison Layfield and Lee Estes, Jack in the Box clearly expected restaurants to have such posters, they did have posters, they were periodically audited for compliance, and corrective action was expected in the event a posting was found deficient for any reason.

   But even if there were any question about the posters, the focus here is whether *Plaintiffs* are to be excused from complying with the FLSA statute of limitations due to ignorance about their legal rights.  Once Plaintiffs began representation with counsel before August 13, 2010, anything they might not have learned from a poster was corrected either by the knowledge they admit they gained from Mr. Egan about their rights, or that is imputed to them as a matter of law

Page 18 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

by retention of counsel.  In *Patraker, supra*, 9 WH Cases2d at 396-97, "the Court assume[d] that the failure to post that notice, in other circumstances, might result in equitable tolling. But not here."  Rather:

> In this case, plaintiff retained an attorney in the spring of 1998 to advise him regarding his proposed employment contract with defendants which included, among other things, his post-July 1, 1998 compensation. Patraker Aff. ¶6.  *Once he did so, any failure to post the required notice became immaterial. See, e.g., Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47-48 (2d Cir. 1978) (tolling inappropriate where plaintiff represented by counsel); *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109-10 (2d Cir. 1978) (tolling inappropriate, despite failure to post notice of rights under Title VII, where plaintiff retained attorney during limitations period and thus "had access to a means of acquiring knowledge of his rights"); *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1213 (7th Cir. 1993) (failure to post ADEA notice tolls statute until plaintiff hires attorney); *Stallcop v. Kaiser Founds. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.), *cert. denied*, 484 U.S. 986 (1987) (no equitable tolling where plaintiff consulted counsel during period).  * * * * Once the plaintiff hired a lawyer to advise him concerning his employment situation, the means of knowledge of his rights were at his disposal.

(emphasis added)

### c.  There Are No Triable Issues Of Fact Concerning Plaintiffs' Efforts to Discover Defendant's Statute of Limitations Defense

Plaintiffs claim on the basis of *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007) that their claims should be equitably tolled because their counsel sought to ascertain the bases for Defendant's statute of limitations defense.  In *Adams*, the statute was tolled during the time class counsel could not obtain potential plaintiffs' contact information for sending a *Hoffman-LaRoche* notice.[17]  In that case, lack of contact information obviously frustrated the notice process and therefore came within what the *Adams* Court correctly understood to be a very narrowly applied exception for equitable modification of the statute of

---

[17]     Plaintiffs also rely on *Mowdy v. Beneto Bulk Transp. Co.*, 2008 WL 901546 (N.D. Cal. March 31, 2008), which allowed limited equitable tolling for the same reason as in *Adams*: delayed contact information for class notice purposes.  *Mowdy* is no more applicable here than is *Adams*.  *See also Titchenell v. Apria Healthcare, Inc.*, 2012 WL 3731341 (E.D. Pa. Aug. 29, 2012), a case cited by Plaintiffs, DKT #261 at p. 19, where equitable tolling was denied because the plaintiffs' lawyer did not properly frame the interrogatory seeking class member contact information before the class notice was sent.

Page 19 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

limitations.  *Id.* at 542 ("Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights.")

Plaintiffs complain that their counsel sought to learn the basis for Defendant's statute of limitations defense.  Assuming *arguendo* that Class Counsel has accurately described his efforts, a contention Defendant does not necessarily agree with, it still does not create an equitable tolling situation under *Adams*.  For one thing, as Judge Stewart has noted, the lack of any consents with the initial complaint "was just as apparent to plaintiffs. Plaintiffs could have filed their individual opt-in consent forms with (or any time after) the filing of their Complaint." DKT #191, p. 5.  In other words, unlike the contact information in *Adams* that was held only by the employer, the lack of consents was information for anyone, including Class Counsel to see.

Moreover, the facts supporting a statute of limitations defense based on lack of consents did not happen until March 31, 2013: "until the last named plaintiff failed to timely file the opt-in consent, defendant did not have the predicate acts to sustain a statute of limitations defense as to all FLSA claims."  *Id.* at p. 6.  And until Defendant had a defense based on lack of consents, it had no duty to warn opposing counsel about the issue, *Id.* at p. 5, and deliberation of the potential defense was purely privileged as litigation strategy or work product.[18]

Plaintiffs nonetheless complain that they were diligent in trying to obtain information about a statute of limitations defense.  They were for a short period of time.  There is no dispute that on May 6, 2012, Class Counsel sought leave to submit interrogatories on a statute of limitations defense, DKT #71, and that several weeks later, at a May 22, 2012 hearing, Judge Stewart took care of the issue when she dismissed the statute of limitations and several other

---

[18] Any actions consciously not taken by defense counsel, in  the absence of a contrary duty, are clearly subject to the work product doctrine since any decision to refrain from acting would clearly concern litigation strategy, which constitutes privileged work product.  *United States v. Brooks,* 163 F.R.D. 601, 604 (D. Or. 1995); *Richmark Corp. v. Timber Falling Consultants,* Inc., 126 F.R.D. 58 (D. Or. 1989); *Gomez v. Vernon,* 255 F.3d 1118, 1132 (9th Cir. 2001); *Clarke v. American Commerce Nat'l Bank,* 977 F.2d 1533 (9th Cir. 1992).

Page 20 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

affirmative defenses without prejudice and required that Defendant provide specific facts in the

event it sought in the future to assert the defense.  The following exchange between the Court,

Mr. Egan and Jennifer Nelson, then a member of the defense legal team,[19] is key:

> THE COURT: * * *  I assume that means that the defendant does not intend to
> raise those defenses with respect to these named plaintiffs.  Is that correct?

> MS. NELSON: At this time no, Your Honor, but it may happen at the dispositive
> motion stage that we are able to do that.  And so I would ask that those be -- that
> with regards to the named plaintiffs, that it be dismissed without prejudice, with
> leave to amend as well.

DKT #185 at pp. 10-11.  Judge Stewart then ruled as follows:

> THE COURT: Let me tell you this. I'm going to dismiss them with leave to
> amend.  You're going to have to amend and add them as affirmative defenses
> before you file dispositive motions as to any of the named plaintiffs.

> MS. NELSON: Okay.

> THE COURT: Okay?  Because both Mr. Egan -- well, Mr. Egan needs to know
> whether you're raising them as to any of his plaintiffs, and whether he has
> sufficient discovery to respond to them if you're going to present them in a
> dispositive motion, as I assume you will.

Id. at p. 12.  In short, the Court prescribed the very procedure that has been followed here.  Once

the facts for a statute of limitations defense materialized, Defendant moved to amend its

affirmative defenses and for summary judgment.  Plaintiffs had additional discovery.  Nothing

happened in this sequence before the statute of limitations ran on March 31, 2013 to equitably

toll the limitations period in this instance.  Unlike in *Adams* where the employer refused to

produce the contact information to allow the notice process to go forward, Defendant moved

without delay to get the issue before the court once the facts supporting the defense materialized.

---

[19]     Ms. Nelson has since left Littler Mendelson.

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

4.   **PLAINTIFFS HAVE PRESENTED NO TRIABLE ISSUES FOR APPLYING EQUITABLE ESTOPPEL.**

a.   **Introduction.**

As the Ninth Circuit noted in *Stallcop*: "Equitable estoppel focuses on the defendant's actions.  There must be evidence of an improper purpose by the defendant, or of the defendant's actual or constructive knowledge that its conduct was deceptive.  *Naton*, 649 F.2d at 696."  Judge King added in *Duncan* that "equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations."  Even more about equitable estoppel comes from *Tompkins v. Union Pacific Railroad Co.*, *supra*, at *7, where the court explained:

> Equitable estoppel focuses on the defendant's affirmative actions that prevent a plaintiff from filing a suit.  *Id*. at 1176 (citing *Naton*, 649 F.2d at 696).  To determine whether equitable estoppel applies, courts consider several factors, such as whether the plaintiff actually relied on the defendant's representations, whether such reliance was reasonable, whether there is evidence that the defendant's purpose was improper, whether the defendant had actual or constructive knowledge that its conduct was deceptive, and whether the purposes of the statute of limitations have been satisfied.  *Naton*, 649 F.2d at 696 (citations omitted). To survive a motion to dismiss, the plaintiff must plead with particularity the conduct that gives rise to the estoppel.  *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2003).

b.   **Plaintiffs Fail To Establish That They Reasonably Relied On Any Action By Defendant When They Failed To File Consents.**

Missing in Plaintiffs' long brief is any single contention that they or their counsel relied on anything Defendant or its counsel said or did at any time.  While Class Counsel complains that he never knew the reason for Defendant's statute of limitations defense until the motion to amend and instant motion were filed, no contention is made, or can be made, that not knowing what Defendant may have intended by a defense prevented his clients' consents from being filed.

In each of the cases cited by Plaintiffs for the equitable estoppel proposition, specific events caused inaction.  In *Westinghouse Elec. v. James Stewart, Co.*, 336 F.2d 777 (9th Cir.

Page 22 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

1964), a Miller Act case, a supplier promised to tell the general contractor if the subcontractor

failed to pay it.  When the supplier failed to do so, the court held it a jury question whether the

supplier might be estopped from proceeding against the general contractor.  And in *M.N.O. v.*

*Magana,* 2006 WL 559214 (D. Or. March 6, 2006), physical threats by persons in authority

positions discouraged the plaintiff from coming forward.

There are no similar contentions here.  *M.N.O. v. Magana* is not even remotely

applicable, and certainly not factually.  Likewise, there is no evidence that Defendant ever

promised to tell Plaintiffs about its future defensive strategic intentions or that it would not

pursue the statute of limitations, the latter kind of act one that Judge King suggested in *Duncan*

might support an estoppel theory.  In fact, just the opposite is true.  At the May 22, 2012 hearing,

Ms. Nelson stated that Defendant wanted to keep an ability to assert the defense *against the*

*named plaintiffs* at a later date and therefore the Court dismissed the defense at that time *without*

*prejudice*.  DKT #185 at p. 10-11.  Plaintiffs simply could not have relied at that point on any

belief that the defense would not be asserted against them in the future.

The procedural facts in this case are contrary to those that typically comprise the narrow

class of cases where equitable estoppel has been applied.  No assurances or actions happened

here to have lulled Plaintiffs into a false sense of security that that the defense would not be

asserted.  *See Atkins v. Union Pacific R.R.,* 685 F.2d 1146, 1148-49 (9th Cir. 1982), where

equitable estoppel was applied because the employer defendant could be held to have promised

to settle the employee plaintiff's claims:

> The essential facts alleged are these: (1) Atkins is a man of low intelligence and
> poor memory, and the defendant knew this; (2) defendant made a settlement offer,
> but never replied to Atkins' counter-offer until after the statute had run; (3) defen-
> dant knew Atkins thought he was represented by the Reiter law firm, but did not
> inform Atkins when it received a letter from Reiter's partner disclaiming repre-
> sentation; (4) that defendant acted in bad faith; (5) that Atkins relied on the

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

defendant's pursuit of a settlement.

Defendant argues that these facts, even if true, would not support a claim of estoppel, because Atkins is asserting "estoppel by silence" and it had no duty to speak.   Under ordinary circumstances, the employer probably has no duty to inform the injured employee of the statute of limitations. [cites omitted] However, conduct or representations by the defendant-employer which tend to "'lull( ) (the plaintiff) into a false sense of security,' " can estop the defendant from raising the statute of limitations, on the general equitable principle that "no man may take advantage of his own wrong." [Cite omitted]

We find that plaintiff has alleged facts which, if true, would estop defendant from asserting the statute.   If the defendant knew or suspected that Atkins was unrepresented; if it knew or suspected that he had a limited ability to protect his own interests; and if Atkins relied on the claims agent's assurances that the railroad would settle the claim, the defendant must in equity be estopped to plead the statute.

Not one of the foregoing factors is present in this case.   As held in this case, Defendant had no duty to warn Plaintiffs about the consents issue.   Plaintiffs have at all times had experienced counsel and, accordingly, there is no question about their ability to have protected their own interests.   And, again, no assurances or representations were given upon which Plaintiffs could have or actually did reasonably rely.

### c.   Plaintiffs Fail To Establish That Defendant Engaged In Any Wrongful Or Deceptive Act That Caused Them Not To Comply With the Consent Requirement.

Plaintiffs contend that Defendant and its counsel "specifically [tried] to avoid revealing the nature of the defense much earlier than it admits to doing so." DKT #261 at p. 34.   This argument provides no basis for equitable modification of the limitations period for several reasons.

For one thing, their speculation that Defendant had earlier knowledge is contradicted by interrogatory responses, verified under oath by Jack in the Box in-house attorney Raymond Pepper.  DKT # 255, pp.18-28.  Mr. Pepper verified that Jack in the Box learned of the consents issue in late April or May 2012.  Mr. Egan provides no basis in his brief for challenging Mr.

Page 24 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pepper's statement.  More importantly, for purposes of this motion, Mr. Egan cannot create issues of fact to stave off entry of summary judgment by his own self-serving speculation about another's credibility.  FRCP 56(c).

Plaintiffs' list of 24 procedural events starting at page 28 of their brief, DKT #261 at p. 34, likewise generate no issues of fact.  These various items – undated and uncited – are not evidence that Defendant violated any duty to provide Plaintiffs with information about the consents issue; again Defendant had no such duty.  They are not evidence that Defendant failed to respond to any discovery request about the statute of limitations.[20]  There is no evidence that Defendant made any misrepresentation about the statute of limitations defense or, in particular, the consent issue.  Again, Defendant did just the opposite by preserving that issue at the hearing on May 22, 2012.

In short, splashing the list of alleged procedural defalcations into their brief as Plaintiffs have done simply is not credible.[21]  An example of this is in their Item 20 (which also is a repeat of Item 19):  "Specifically and voluntarily omitting any statute of limitations defense from its Second Amended Answer as filed."  DKT #261 at p. 35.  This apparently refers to a motion Jack in the Box filed during the certification hearing on October 22, 2012, DKT #132, which was filed in response to contentions made in Plaintiffs' certification reply memorandum, DKT #131, that some of Defendant's arguments against certification were really affirmative defenses.  The Item 20 allegation fails to inform that Judge Stewart ruled at the May 22, 2012 hearing that the statute of limitation defense could not be asserted in the absence of a factual basis for it.  DKT #185, p. 12.  That factual basis did not happen until March 31, 2013, after which time Judge

---

[20]    While Plaintiff sought leave on May 6, 2012 to promulgate an additional interrogatory aimed at a statute of limitations defense, DKT #71, Judge Stewart handled that by her May 22, 2012 ruling.  DKT #185, p. 12.

[21]    Nor should Class counsel be allowed, as he has repeatedly tried in this case, and again threatened in his brief, to turn a trial in this case into an attack on defense counsel.

Page 25 -  REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

Stewart then allowed the defense.  DKT #191.

Plaintiffs also seem to claim that Defendant sought to "run out the clock" so that it could then assert the consent defense once March 31, 2013 passed.  However, as Judge Stewart noted, much of the litigation length reflects Class Counsel's conscious choices to engage in extensive pre-certification discovery.  DKT #191 at p.7.  After Defendant objected to Plaintiffs' heavy discovery before seeking conditional certification of an FLSA collective, Judge Stewart expressly forbade Plaintiffs in an April 11, 2012 order from propounding further discovery.  DKT # 69; see also DKT #73 at p. 2.  After this, Plaintiffs finally commenced the certification process, filing their opening brief in mid-August, 2012.

But rather than seek conditional certification of the FLSA claims by themselves, Plaintiffs opted for a complex certification process which included two Rule 23 theories as well as the FLSA collective theory.  DKT #113.  Their certification reply brief was 121 pages long.  DKT #131.  Oral argument was held on October 22, 2012, and, Judge Stewart was unable to issue a ruling until January 28, 2013.  DKT # 158.  This was understandable.  Adding greatly to Judge Stewart's burden was that some weeks following oral argument on class certification, Class Counsel tried to expand the case dramatically by adding new defendants, including more than a hundred separate Jack in the Box franchise operators and one or more vendors.  DKT #149.  The move threatened to bring untold numbers of lawyers into the case.  Judge Stewart denied Plaintiffs' motion to amend, but among the immediate casualties from this skirmish was her ability to have gotten to the certification order any sooner than she did.

Once Judge Stewart's Findings and Rulings on certification issued in January, 2013, both sides submitted brief and responses in support of their respective objections.  Judge Haggerty issued the Certification Order on April 1, 2013, DKT #173, coincidentally the day after the

statute of limitations ran.

Again, Plaintiffs engaged in heavy discovery well into the Spring of 2012 before it was stopped by Judge Stewart. Plaintiffs' certification choices and actions thereafter extended the calendar even further. In short, the Plaintiffs and their counsel have only themselves to blame for the time passage. They certainly present no basis for an equitable estoppel application. *See O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) (where much of the procedural situation was caused by the plaintiff, the court denied application of equitable estoppel).

Nor can any "bad act" be found in not telling Class Counsel about the consents issue, once Defendant became aware of it. Judge Stewart already had held Defendant had no such duty. *See also Atkins v. Union Pacific R.R. supra,* 685 F.2d at 1148 ("Under ordinary circumstances, the employer probably has no duty to inform the injured employee of the statute of limitations.").

Finally, while Plaintiffs contend that equitable estoppel issues are routinely for the jury, if the factual context makes the non-moving party's claim implausible, that party must provide more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). *See also Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2003) (a plaintiff must plead with particularity the conduct that gives rise to the estoppel.) Plaintiffs have not done so and their equitable estoppel claim provides no basis for disregarding the statute of limitations.

**D.    PLAINTIFFS HAVE NOT OPPOSED DEFENDANT'S MOTION TO DISMISS THE STATE LAW CLAIMS FOR JURISDICTIONAL REASONS.**

Inexplicably, Plaintiffs have failed to respond to Defendant's argument beginning at page 8 of their opening brief (DKT #175, p. 8) that upon dismissal of the FLSA claims, the Court

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309

should decline supplemental jurisdiction and dismiss the state claims.  In *Nelson v. Unified Grocers, Inc.,* 2011 U.S. Dist. LEXIS 151483, *30-31 (D. Or. July 18, 2011), Judge Papak summarized the law applicable to instances where a party fails to oppose a summary judgment argument:

> Unified argues that, because he did not address them at all in his memorandum in opposition to summary judgment, Nelson has waived his claims for disability discrimination and retaliation under the ADA and Oregon law, and for workers' compensation discrimination, failure to reinstate, and failure to reemploy under Oregon law (claims one through five in Nelson's Complaint, #2).  Many courts have noted that it is "not the District Court's responsibility to sift through the record to see if, perhaps, there [is] an issue of fact." *Satcher v. Univ. of Ark at Pine Bluff Bd. of Trs.,* 558 F.3d 731, 735 (8th Cir. 2009) (holding that "[i]t was [the non-movant]'s responsibility to show that there were genuine issues of material fact in the record that precluded the summary judgment [movant] sought," and further holding that "failure to oppose a basis for summary judgment constitutes waiver of that argument.").  A party opposing summary judgment must either "cit[e] to particular parts of materials in the record," or show that the materials cited by the adverse party do not establish the absence of a genuine dispute, in order to demonstrate that a genuine issue of material fact exists for trial.  Fed. R. Civ. P. 56(c).

## III.  CONCLUSION

For all of the reasons stated in its opening brief, Defendant respectfully requests that the state claims also be dismissed.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 10,494 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated:  January 28, 2014

Respectfully submitted,


*/s/ Douglas S. Parker*
Douglas S. Parker, OSB No. 821017
Jennifer Warberg, OSB No. 035472
Don H. Stait, OSB No. 105134
Littler Mendelson, P.C.

Attorneys for Defendant
JACK IN THE BOX INC., a Corporation of
Delaware


Firmwide:125204714.1 063201.1002

LITTLER MENDELSON, PC
121 SW Morrison, Suite 900
Portland, OR  97024
Tel: 503.221.0309