IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY               3:10-CV-00960-BR
GESSELE, NICOLE GESSELE,
TRICIA TETRAULT, and                  OPINION AND ORDER
CHRISTINA LUCHAU, on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

v.

JACK IN THE BOX, INC., a
Corporation of Delaware,

        Defendant.


JON M. EGAN
240 Sixth Street
Lake Oswego, OR 97034-2931
(503) 697-3427

        Attorney for Plaintiffs

DOUGLAS S. PARKER
JENNIFER NETH WARBERG
DON STAIT
Littler Mendelson, P.C.
121 S.W. Morrison Street
Suite 900
Portland, OR 97204
(503) 221-0309

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#174) for Summary Judgment and Plaintiffs' Motion (#276) to Strike.  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES as moot** Plaintiffs' Motion to Strike, **DISMISSES with prejudice** Plaintiffs' FLSA claims, and **DISMISSES without prejudice** Plaintiffs' state-law claims.


## BACKGROUND

On August 13, 2010, Plaintiffs Jessica Gessele, Ashley Gessele, Nicole Gessele, and Tricia Tetrault on behalf of all those similarly situated filed a putative class-action Complaint in this Court against Defendant Jack in the Box, Inc., for violation of the minimum-wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and various Oregon wage-and-hour laws.  Specifically, Plaintiffs alleged Defendant (1) failed to pay minimum wages in violation of the FLSA, (2) failed to pay overtime wages in violation of the FLSA, (3) failed to pay minimum wages in violation of Oregon Revised Statute § 653.025, (4) failed to pay overtime wages in violation of Oregon Revised Statute § 653.261, (5) failed to pay all wages due after termination of Plaintiffs' employment in violation of Oregon Revised Statute § 652.140, (6) deducted

unauthorized amounts from Plaintiffs' paychecks in violation of Oregon Revised Statute § 652.610, (7) failed to issue wages in the form required by Oregon Revised Statute § 652.110, and (8) failed to pay all wages when due as required by Oregon Revised Statute § 652.120.

On December 15, 2010, Defendant moved to dismiss Plaintiffs' First through Fifth Claims. On January 31, 2011, Magistrate Judge Janice M. Stewart issued Findings and Recommendation in which she recommended the Court grant Defendant's Motion to Dismiss.

On April 11, 2011, Senior District Judge Ancer Haggerty issued an Order adopting the Findings and Recommendation, granting Defendant's Motion to Dismiss, and granting Plaintiffs leave to file an Amended Complaint.

On May 16, 2011, Plaintiffs filed a First Amended Complaint in which they asserted the same claims as in their initial Complaint but added Christina Luchau as a Plaintiff and included additional facts to support their claims.

On May 31, 2011, Defendant filed an Answer to Plaintiffs' First Amended Complaint in which it asserted, among other things, a statute-of-limitations defense as follows: "Plaintiffs' claims are barred in whole, or in part, by applicable statutes of limitations."

On July 18, 2011, Plaintiffs filed a Motion to Strike

3 - OPINION AND ORDER

Defendant's Affirmative Defenses.  In particular, Plaintiffs moved to strike Defendant's statute-of-limitations defense on the ground that Defendant did not "identify which claims are allegedly subject to this affirmative defense, nor in what way they are supposedly barred. . . .  Plaintiffs therefore cannot substantially respond to nor pursue discovery on this issue."

On August 30, 2011, Magistrate Judge Stewart heard oral argument on Plaintiffs' Motion to Strike.

On September 2, 2011, Magistrate Judge Stewart issued an Opinion in which she concluded, among other things, that Defendant's statute-of-limitations defense was "merely a precautionary defense without a sufficient factual basis." Magistrate Judge Stewart, therefore, granted Plaintiffs' Motion to Strike as to Defendant's statute-of-limitations defense "without prejudice to defendant's right to amend its answer."

On December 14, 2011, Magistrate Judge Stewart held a status conference in which she advised the parties that she was going to enter an order tolling the statute of limitations "for absent collective class members" beginning on December 14, 2011, and continuing "until class certification."  Dec. 14, 2011, Hearing Tr. 54-55 (#148).  On December 14, 2011, Magistrate Judge Stewart also issued the Order (#59) tolling the statute of limitations for "absent putative class members."

On March 20, 2012, Plaintiffs filed a Second Amended

4 - OPINION AND ORDER

Complaint in which Plaintiffs allege Defendant (1) failed to pay minimum wages in violation of the FLSA, (2) failed to pay overtime wages in violation of the FLSA, (3) failed to pay minimum wages in violation of Oregon Revised Statute § 653.025, (4) failed to pay overtime wages in violation of Oregon Revised Statute § 653.261, (5) failed to pay all wages due after termination of Plaintiffs' employment in violation of Oregon Revised Statute § 652.140, (6) deducted unauthorized amounts from Plaintiffs' paychecks in violation of Oregon Revised Statute § 652.610, and (7) failed to pay all wages when due as required by Oregon Revised Statute § 652.120.

On April 12, 2012, Defendant filed an Answer to Plaintiffs' Second Amended Complaint in which it asserted Affirmative Defenses that again included the statute of limitations. As in Defendant's Answer to Plaintiffs' First Amended Complaint, Defendant alleged only that "Plaintiffs' claims are barred in whole, or in part, by applicable statutes of limitations."

On May 22, 2012, Magistrate Judge Stewart heard oral argument on various Motions pending at that time. At the hearing Plaintiffs made an oral Motion to Dismiss Defendant's Affirmative Defenses. The Magistrate Judge granted Plaintiffs' Motion and dismissed Defendant's statute-of-limitations defense without prejudice and with leave to amend. The Magistrate Judge noted:

> I think what is going to happen in this case is at
> some point, if the defendant decides that it has,

for example, a valid statute of limitations
defense with a particular class member with
respect to a particular claim, they're going to
have to seek leave of court to amend and add that
affirmative defense with specific factual
allegations to go forward.

Tr. (#185) at 7 (May 22, 2013).  The Magistrate Judge
specifically declined Plaintiffs' request to dismiss with
prejudice the statute-of-limitations defense against the named
Plaintiffs.

On August 13, 2012, Plaintiffs filed a Motion to Certify
Oregon Rule 23(b)(3) Classes and Alternative Motions to Either
Certify Hybrid FLSA Classes or Certify FLSA 216(b) Collectives.

On October 22, 2012, Defendant filed a Motion to
Amend/Correct Answer in which it requested leave to file an
Amended Answer to Plaintiffs' Second Amended Complaint that,
among other things, did not include a statute-of-limitations
Affirmative Defense.

On December 13, 2012, Plaintiffs filed a Third Motion for
Leave to File Amended Complaint.

On December 20, 2012, Magistrate Judge Stewart issued an
Order granting Defendant's Motion to Amend/Correct Answer.  On
December 27, 2012, Defendant filed its Amended Answer to
Plaintiffs' Second Amended Complaint.  Defendants' Amended Answer
did not include a statute-of-limitations Affirmative Defense.

On January 7, 2013, Magistrate Judge Stewart denied
Plaintiffs' Third Motion for Leave to File Amended Complaint on

6 - OPINION AND ORDER

the grounds of undue delay and prejudice.  Specifically, the
Magistrate Judge noted:

> Given the amended pleadings, extensive discovery
> and motion practice to date, including plaintiffs'
> pending motion for class certification, this case
> is too far advanced to add two new defendants
> (including a representative of a proposed
> defendant class), many new claims unrelated to the
> pending claims for wage and hour violations,
> additional putative class members, and over 50 new
> proposed classes and subclasses.

Order (#157)(Jan. 7, 2013).

On January 28, 2013, Magistrate Judge Stewart issued
Findings and Recommendation in which she recommended granting in
part and denying in part Plaintiffs' Motion to Certify and
specifically recommended conditional certification of Plaintiffs'
proposed FLSA Workers Benefit Fund and Shoe Collectives and
Subcollectives under § 216(b) and certification of Plaintiffs'
proposed Rule 23(b)(3) Oregon Workers Benefit Fund and Shoe
Classes and Subclasses.

On April 1, 2013, Judge Haggerty entered an Order adopting
the January 28, 2013, Findings and Recommendation; conditionally
certifying Plaintiffs' proposed FLSA Workers' Benefit Fund and
Shoe Collectives and Subcollectives under § 216(b);and certifying
Plaintiffs' proposed Rule 23(b)(3) Oregon Workers Benefit Fund
and Shoe Classes and Subclasses.

On May 7, 2013, Defendant filed a Motion for Leave to Amend
Answer in which Defendant sought to include a statute-of-

limitations defense.  Specifically, Defendant asserted the named Plaintiffs failed to file written consent forms that are a prerequisite to commencing a collective action under §§ 216(b) and 256 of the FLSA and on March 31, 2013, the FLSA's three-year limitation period expired as to the named Plaintiffs.  According to Defendant, therefore, for the first time Defendant had a specific factual basis to support its statute-of-limitations defense.

Also on May 7, 2013, Defendant filed a Motion for Summary Judgment as to all of Plaintiffs' claims on the grounds that Plaintiffs' FLSA claims are barred by the statute of limitations and this Court may not exercise supplemental jurisdiction over Plaintiffs' state-law claims.

On May 31, 2013, Plaintiffs filed a Response to Defendant's Motion for Leave to Amend Answer in which they objected to Defendant's Motion on numerous grounds.

On June 18, 2013, Magistrate Judge Stewart issued an Opinion and Order in which she granted Defendant's Motion for Leave to Amend Answer.  On July 1, 2013, Plaintiffs filed Objections to the Opinion and Order.

On August 27, 2013, this Court issued an Order affirming Magistrate Judge Stewart's Opinion and Order and granted Defendant's Motion for Leave to Amend Answer.

On October 16, 2013, the Court entered an Order granting

Plaintiffs additional time to conduct discovery related to the
statute-of-limitations issues before filing a response to
Defendant's Motion for Summary Judgment.  Because it was not
clear to the Court how much additional time Plaintiffs were
requesting or what "reasonable parameters the Court should set
for the additional discovery," the Court directed counsel to
confer and to submit no later than October 28, 2013, a joint
statement setting forth their respective positions regarding the
time necessary to complete the additional discovery as well as a
proposed schedule to complete the briefing on Defendant's Motion
for Summary Judgment.

On October 28, 2013, Defendant filed a Motion for Stay of
Certain Proceedings and for a Status Conference instead of filing
a joint statement.  In its Motion Defendant sought a stay of
proceedings as to Plaintiffs' Motions that were filed after
Defendant's Motion (#174) for Summary Judgment; *i.e.*, a stay as
to Plaintiffs' Motion (#206) to Appoint Class Administrator and
to Authorize Dissemination of Notice to Class and Collective
Members, Plaintiffs' Motion (#212) for Spoliation Sanctions Re
FLSA Shoe Claims and Defenses, and Plaintiffs' Alternative Motion
(#214) for Partial Summary Judgment on FLSA Shoe Claims and
Defenses.

On November 7, 2013, the Court held a status conference with
counsel for the purpose of (1) considering and resolving the

9 - OPINION AND ORDER

amount of time that should be permitted for additional discovery related to Defendant's pending Motion (#174) for Summary Judgment; (2) considering Defendant's Motion (#217) for Stay of Certain proceedings; and (3) managing the resolution of Plaintiffs' Motions ## 206, 212, and 214.

On November 7, 2013, the Court also issued an Order that (1) set January 3, 2014, as the date for Plaintiffs to file their response to Defendant's Motion for Summary Judgment and January 20, 2014, as the date for Defendant to file its Reply; (2) scheduled oral argument on the parties' various motions to be heard on January 30, 2014; and (3) advised the parties they would not be permitted to file any additional motions without advance leave of Court.

On November 26, 2013, the parties filed a Joint Statement of Stipulated Facts in which they noted:

> Jack in the Box asserts that the named Plaintiffs' FLSA statutes of limitations expired on the following dates:
>
> a. Jessica Gessele:  November 23, 2011 (2012 for willful damages claims)
> b. Ashley Gessele:  February 8, 2011 (2012 for willful damages claims)
> c. Nicole Gessele:  April 1, 2011 (2012 for willful damages claims)
> d. Tricia Tetrault:  July 22, 2010 (2011 for willful damages claims)
> e. Christina Luchau:  March 31, 2012 (2013 for willful damages claims)[.]
>
> Jack in the Box received letters from Mr. Egan on behalf of Plaintiffs asserting various wage claims and citing state and federal statutes on various dates including on May 3,

2010 for Jessica Gessele and on July 26, 2010 for other
plaintiffs.

Jack in the Box's in-house counsel Raymond Pepper and James
Stubblefield had at all relevant times the responsible
knowledge within Jack in the Box of the reasons for the
decision to file the motion for summary judgment at DKT
#175, including the potential availability of an FLSA
defense based on a lack of filed consents.

Joint Statement (#230) at 1.

On November 27, 2013, the parties advised the Court of a

discovery dispute related to defense counsel's knowledge of the

availability of the FLSA statute-of-limitations defense.

On December 12, 2013, the Court held a hearing on the

parties' discovery issue.  On December 12, 2013, the Court also

entered an Order (1) setting December 27, 2013, as the date for

Defendant's responses to interrogatories and briefing on any

objections to the interrogatories; (2) setting January 6, 2014,

as the date for Plaintiffs to file any response; (3) scheduling

a further discovery conference on January 10, 2014; (4) extending

Plaintiffs' deadline to respond to Defendant's Motion for Summary

Judgment (#174) to January 17, 2014, and Defendant's reply to

February 3, 2014; and (5) striking oral argument set on

January 30, 2014.

On January 6, 2014, Plaintiffs filed a Motion to Compel

Discovery and/or Strike Affirmative Defense in which Plaintiffs

sought an order compelling production of discovery from Defendant

and/or striking Defendant's affirmative defense of waiver on the

grounds of Defendant's "(non)responses and its (non)briefing of
its objections."

On January 15, 2014, the Court heard oral argument on
Plaintiffs' Motion to Compel.  On that same day the Court
issued an Order denying Plaintiffs' Motion to Compel; setting
January 21, 2014, as the date for Plaintiffs to respond to
Defendant's Motion for Summary Judgment (#174) and January 28,
2014, as the date for Defendant to file its reply; and setting
oral argument on February 10, 2014, regarding Defendant's Motion.

On February 10, 2014, the Court heard oral argument on
Defendant's Motion for Summary Judgment.  At oral argument
Plaintiffs made an oral motion to strike certain evidence that
Defendant submitted in support of Defendant's Reply in support of
its Motion for Summary Judgment, and the Court permitted
Plaintiffs to file a written motion to strike.  Accordingly, on
February 11, 2014, Plaintiffs filed their Motion to Strike
various Declarations and their attachments.

The Court took Motion #174 and Motion #276 under advisement
on February 14, 2014.

## DEFENDANT'S MOTION (#174) FOR SUMMARY JUDGMENT

### I.    Standards.

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary

judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-
1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)
(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989)).  When the nonmoving party's claims are factually
implausible, that party must "come forward with more persuasive
evidence than otherwise would be necessary." *LVRC Holdings LLC
v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense
determines whether a fact is material.  *Miller v. Glenn Miller
Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment.  *Id*.

**II. Parties' Assertions**.

Defendant moves for summary judgment on the grounds that the
named Plaintiffs failed to file written consent forms as required
by the FLSA; more than three years have passed since the claims
against Defendant accrued, and, therefore, the named Plaintiffs'
claims are now barred by the FLSA statute of limitations; and the
Court may not exercise supplemental jurisdiction over Plaintiffs'
state-law claims because this Court never acquired jurisdiction
over Plaintiffs' federal claims.

Plaintiffs, in turn, contend (1) genuine disputes of
material fact exist as to when Plaintiffs' claims accrued;
(2) Plaintiffs need not file written consents or, in the

alternative, Plaintiffs gave written consent; (3) Plaintiffs filed this action in a dual capacity, and, therefore, their individual claims are not foreclosed by the consent issue; and (4) equitable considerations should preclude the Court from finding Plaintiffs' claims are barred as untimely.

**III. FLSA Generally.**

As noted, Plaintiffs brought their federal wage- and-hour claims under 29 U.S.C. § 216(b) of the FLSA.

"The FLSA regulates minimum wage, overtime pay, equal pay, and child labor, and prohibits employers from retaliating against employees who exercise their rights under the Act." *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901-PHX-LOA, 2013 WL 6228652, at *4 (D. Ariz. Dec. 2, 2013)(citing *Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226, 227–29 (4th Cir. 2011). The FLSA provides no employer "shall employ any of his employees who in a workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation" for hours worked beyond the forty-hour floor "at a rate not less than one and one half times" the rate at which he or she is regularly employed. 29 U.S.C. § 207(a)(1).

Section 216(b) of the FLSA further provides:

> Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their

15 - OPINION AND ORDER

unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Section 216(b) also provides for a private right of action:

An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

In addition, § 255(a) of the FLSA contains the following statute of limitations:

[I]f the cause of action accrues on or after May 14, 1947, . . . such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

Accordingly, actions for violations of the FLSA must be commenced two years after the claim accrues or three years after the claim accrues if the defendant's violation is "willful."

Finally, § 256 of the FLSA provides:

In determining when an action is commenced for the purposes of section 255 of this title, an action . . . under the Fair Labor Standards Act . . . shall be considered to be commenced on the date when the complaint is filed; *except that in the case of a collective or class action* instituted under the Fair Labor Standards Act . . . it shall be considered to be commenced in the case of any individual claimant --

(a) on the date when the complaint is filed,

> if he is specifically named as a party
> plaintiff in the complaint *and* his written
> consent to become a party plaintiff is filed
> on such date in the court in which the action
> is brought; or
>
> (b) if such written consent was not so filed
> or if his name did not so appear--on the
> subsequent date on which such written consent
> is filed in the court in which the action was
> commenced.

Emphasis added.

## IV.  There is not a genuine dispute of material fact as to when Plaintiffs' claims accrued.

As noted, Defendant contends Plaintiffs failed to file written consents as required under § 216(b) within three years[1] of Plaintiffs' termination, and, therefore, their claims are barred by the limitations period set out in § 255(a). Specifically, Defendant contends Plaintiffs' claims accrued no later than the dates on which Plaintiffs received their final paychecks:

        Tricia Tetrault - 7/11/08
        Ashley Gessele - 12/26/08
        Nicole Gessele - 3/20/09
        Jessica Gessele - 11/23/09
        Christina Luchau - 3/30/10.[2]

---

[1] Plaintiffs allege Defendant willfully violated the FLSA. Defendant, therefore, analyzes Plaintiffs' claims for purposes of this Motion under the three-year limitations period for willful violations of the FLSA.

[2] Plaintiffs suggest the Affidavit of Jim Stubblefield setting out these dates is insufficient. Plaintiffs' issues with that Affidavit are not well-taken for a number of reasons, including the fact that Plaintiffs included allegations in their First Amended Complaint (#34) at ¶ 18 that support these dates.

17 - OPINION AND ORDER

Plaintiffs, in turn, contend a "discovery rule" applies to FLSA claims, and, therefore, their claims did not begin to accrue until February 2012 when they knew or had reason to know about the bases for all of their FLSA injuries at issue in this action.

**A.   The FLSA does not contain a discovery rule.**

The regulations governing the FLSA note courts have held "a cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b). The parties do not cite nor could this Court find any provision in the regulations for a discovery rule.  Plaintiffs, nevertheless, assert a discovery rule applies to accrual of an FLSA action.  To support their position Plaintiffs cite *James v. Fenske* in which the court held "[an FLSA] claim accrues when plaintiff knows or has reason to know of the injury which is the basis of the action."  2012 WL 694351, at *5 (D. Colo. Mar. 1, 2012)(citing *Oliver v. Layrisson*, No. 95-cv-0003, 1995 WL 250450, at *3 (E.D. La. Apr. 27, 1995)).  *Oliver*, however, relies on a Fifth Circuit case (*Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)) that cites the standard for accrual of a cause of action brought under § 1983 rather than the FLSA.

The Court could not find any case other than *James* in

which a court applied a discovery rule to the FLSA.  As noted, the regulations provide an FLSA claim accrues when the employer fails to pay the required compensation for any workweek at the regular payday for the period in which the workweek ends.  In addition, numerous courts, including the Ninth Circuit, have held an FLSA cause of action accrues every payday an employer fails to comply with the FLSA.  *See, e.g., Keating-Traynor v. AC Square,* 343 F. App'x 214, 215 (9th Cir. 2009)("The statute of limitations for an FLSA claim accrues the day the employee's paycheck is normally issued, but isn't."); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013)("The cause of action for FLSA and NYLL claims accrues on the next regular payday following the work period when services are rendered.")(citing 29 C.F.R. § 790.21(b)); *Frye v. Baptist Memorial Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012)("An FLSA cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.").  Moreover, district courts in the Ninth Circuit, including courts in this District, have reached the same conclusion.  *See, e.g., Groce v. Claudat*, No. 09CV01630 BTM WMC, 2013 WL 1828555 (S.D. Cal. Apr. 30, 2013); *Black v. Colaska Inc.*, No. C07-823JLR, 2008 WL 4681567 (W.D. Wash. Oct. 20, 2008); *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394 (D. Or. Oct. 14, 2008);

19 - OPINION AND ORDER

*Long v. Idaho Rural Water Assoc., Inc.*, No. CV05-303-S-EJL, 2007 WL 1366534 (D. Idaho, Mar. 29, 2007).

In the absence of any clear authority from the Ninth Circuit that a discovery rule applies to claims under the FLSA and in light of the weight of authority holding a claim for relief under the FLSA accrues "at each regular payday," the Court concludes the discovery rule does not apply to claims under the FLSA. Accordingly, Plaintiffs' claims accrued when Defendant allegedly failed to pay compensation owed to Plaintiffs for any workweek at the regular payday for the period in which the workweek ended and the limitations period began to run on the date of Plaintiffs' final paychecks.

**B.    Even if a discovery rule applies, Plaintiffs' FLSA claims are untimely.**

Even if a discovery rule applies in FLSA cases, Plaintiffs have not established they did not "discover" their FLSA claims until the February 2012 deposition of Gene James.

Courts applying Oregon's discovery rule have explained:

> [T]he applicable statute of limitations begins to run when a plaintiff "'knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements [of legally cognizable harm] (harm, causation, and tortious conduct) exists.'" *Widing v. Schwabe, Williamson & Wyatt*, 154 Or. App. 276, 282–83 (1998)(quoting *Gaston v. Parsons*, 318 Or. 247, 256 (1994)); *Greene v. Legacy Emanuel Hosp. & Health Care Ctr.*, 335 Or. 115, 123 (2002). A "mere suspicion" of a claim is insufficient to start the limitations period. *Gaston*, 318 Or. at

> 256. [However,] "the rule delays the running of
> the limitations period only until the plaintiff
> knows or should know that some harm has been
> incurred and that a claim exists." *Widing*, 154
> Or. App. at 283-84. This is an objective inquiry.
> *Id*. at 283. A plaintiff does not need to identify
> a particular theory of recovery or know to a
> certainty that each element of the claim exists.
> *Gaston*, 318 Or. at 255 & n.8.

*Bechler v. Macaluso*, No. CV 08-3059-CL, 2010 WL 2034635, at *13

(D. Or. May 14, 2010).

Plaintiffs contend their final pay stubs "would not

necessarily give [them] the knowledge of th[e] particular

violations." Specifically, Plaintiffs assert:

> The violations at issue in this case are
> insidious—not every deduction from an employee's
> wages violates the FLSA. In particular, an
> employer's deduction of money from an employee's
> paycheck to pay to a third party is only illegal
> if the employer directly or indirectly benefits
> from the transaction.

> * * *

> The two key facts in Plaintiffs' shoe claims are
> the $2 kickback and the $5,000 medical indemnity
> that Jack in the Box receives from the shoe
> manufacturer. Those are direct benefits that Jack
> in the Box received from the vendor in the
> transaction, and it does not advertise them to its
> employees. Plaintiffs' counsel did not discover
> these kickback or medical indemnity benefits until
> Gene James (Jack in the Box's Director of Asset
> Protection) blurted them out during his
> February 6, 2012 deposition. The named Plaintiffs
> did not learn about these benefits until preparing
> for their depositions shortly thereafter.

Pls.' Resp. at 5-6.

As Defendant points out, however, Plaintiffs included

21 - OPINION AND ORDER

allegations related to Defendant's slip-resistant shoe program (Shoes for Crews) in their initial Complaint filed in August 2010.  Specifically, Plaintiffs alleged in that Complaint that "[a]t all relevant times, JACK IN THE BOX required its employees to purchase a specific type of shoes from a specific company (called Shoes for Crews) and that they re-purchase new pairs of said shoes from time to time, and willfully deducted the price of said shoes from the pay of its employees without meeting the statutory requirements to do so." Compl. at ¶ 7.  Plaintiffs also alleged "the evidence available to date strongly suggests additional wage and hour violations have taken place," which resulted in Defendant failing to pay Plaintiffs the federal minimum wage due to "nonpayments and deductions." Compl. at ¶¶ 12, 19.  Plaintiffs included the same allegations in their May 16, 2011, First Amended Complaint.  Finally, in their March 20, 2012, Second Amended Complaint Plaintiffs included additional factual allegations to support their claims, but the substance of the allegations did not change and the claims (violation of the FLSA) remained the same.

        In addition, Plaintiffs stated in their April 15, 2011, Reply in support of their Motion to Compel that they had "discovered from other sources" that Shoes for Crews pays the first $5,000 of any workers'-compensation claim by an employee who slips while wearing Shoes for Crews shoes.  This statement

22 - OPINION AND ORDER

undermines Plaintiffs' assertion that they did not know about the rebates (or kickbacks) from Shoes for Crews until James mentioned them at his February 2012 deposition.

Thus, on this record the Court concludes even if Plaintiffs did not know the exact parameters of their FLSA claims related to Shoes for Crews or the medical indemnity benefits until James's February 2012 deposition, they were aware as early as August 2010 that "some harm" had been incurred and that a claim existed under the FLSA related to the shoe program and other deductions.

**V.  Plaintiffs were required to file written consents and Plaintiffs' FLSA claims could not commence until the written consents were filed.**

Defendant contends it is entitled to summary judgment as to Plaintiffs' FLSA claims because Plaintiffs were required to file written consents with this Court pursuant to §§ 216(b) and 256 of the FLSA, and Plaintiffs did not file those consents within three years of their final paydays or paychecks.

Plaintiffs assert Defendants are not entitled to summary judgment because (1) named plaintiffs are not required to file written consents under the FLSA; (2) Plaintiffs filed this case in a dual capacity as individuals and as a collective action, and written consents are not required for FLSA claims brought as individuals; and (3) Plaintiffs gave Defendant constructive notice of Plaintiffs' FLSA claims.

23 - OPINION AND ORDER

**A.    Named plaintiffs are required to file written consents to commence an FLSA collective action.**

As noted, § 216(b) of the FLSA provides for a private

right of action:

> Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

Emphasis added.  In addition, § 256 of the FLSA provides:

> In determining when an action is commenced for the purposes of section 255 of this title, an action . . . under the Fair Labor Standards Act . . . shall be considered to be commenced on the date when the complaint is filed; *except* that in the case of a collective or class action instituted under the Fair Labor Standards Act . . ., it shall be considered to be commenced in the case of any individual claimant--
>
> > (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint *and* his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

> (b) if such written consent was not so filed
> . . . on the subsequent date on which such
> written consent is filed in the court in
> which the action was commenced.

Emphasis added.

Although the Ninth Circuit has not directly addressed the issue, other circuit courts as well as district courts within the Ninth Circuit have dismissed FLSA collective-action claims when named plaintiffs have not filed timely consents. For example, in *Frye v. Baptist Memorial Hospital, Inc.*, the court affirmed the district court's dismissal of the FLSA collective action because the named plaintiff failed to file a written consent with the court within the FLSA's limitations period. 495 F. App'x 669, 677 (11th Cir. 2012). It was undisputed that the plaintiff's last payday was April 27, 2007, and that he failed to file a written consent to collective action in the district court within three years of his final paycheck. *Id.* at 675. The plaintiff, like Plaintiffs here, asserted the FLSA does not require named plaintiffs to file written consents. The Eleventh Circuit, however, rejected that argument:

> [T]he plain language of § 256(a) does
> [require named plaintiffs to file written
> consents]. That provision unambiguously
> provides that collective actions "shall be
> considered to be commenced" for statute-of-
> limitations purposes "on the date when the
> complaint is filed, if he is specifically
> named as a party plaintiff in the complaint
> *and* his written consent to become a party
> plaintiff is filed on such date." *Id.*
> § 256(a)(emphasis added). If any doubt

> remains, subsection (b) confirms the
> written-consent requirement by providing that
> an FLSA collective action commences "on the
> subsequent date on which such written consent
> is filed." *Id*. § 256(b).  Accordingly,
> courts construe the above language to do what
> it says:  require a named plaintiff in a
> collective action to file a written consent
> to join the collective action.

*Id*.  The plaintiff in *Frye* (again, like Plaintiffs here) relied

on *Arias v. United States Service Industry, Inc.*, No. 93-2261,

1994 WL 193901, at *1 (D.D.C. May 4, 1994), to support his

assertion that named plaintiffs are not required to file written

consents.  The Eleventh Circuit, however, pointed out that

> [*Arias*,] which did not involve a statute-of-
> limitations issue under § 256, cited only one
> authority in concluding that 29 U.S.C.
> § 216(b) did not require named plaintiffs to
> file written consents:  *Allen v. Atlantic
> Richfield Co.*, 724 F.2d 1131 (5th Cir. 1984).[3]
> Yet *Allen* involved plaintiffs asserting
> individual claims - subject to different FLSA
> commencement rules - rather than joining a
> collective action.  *Id*. at 1135 ("This suit
> consists of a number of individual actions,
> not a collective or class action subject to
> sections [216(b)] and 256."); *see* 29 U.S.C.
> § 256 (providing that an individual action
> "shall be considered to be commenced on the
> date when the complaint is filed"); *Morelock
> v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.
> 1978)(explaining that the written-consent
> requirements of §§ 216(b) and 256 apply only
> to representative actions).  *Arias* thus does
> not persuade us to depart from § 256's
> express written-consent requirement for
> collective actions.

*Id*. at 675-76.

---

[3] Plaintiffs here also rely on *Allen*.

Here Plaintiffs point to several cases from a variety of courts outside of the Ninth Circuit to support their assertion that named plaintiffs do not have to file written consents. Those cases, however, do not address the issue raised here or, in any event, are distinguishable. For example, *Knepper v. Rite Aid Corporation* did not involve the issue of written consents. 675 F.3d 249 (3d Cir. 2012). The court in that case concluded federal jurisdiction was not precluded as to class actions asserting claims under state statutory wage-and-overtime laws paralleling the FLSA, that the FLSA does not preempt various state wage-and-hour laws, and certification of class actions in which plaintiffs assert claims under the state statutes does not violate the Rules Enabling Act. 675 F.3d 249, 261, 264-65 (3d Cir. 2012). Although *Knepper* included a general discussion of the legislative history of the opt-in provision of the FLSA, it did not explicitly address the written-consent issue.

In *Symczyk v. Genesis HealthCare Corporation* the Third Circuit stated without analysis:

> To qualify for relief under the FLSA, a party plaintiff must "commence" his cause of action before the statute of limitations applying to his individual claim has lapsed. *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 469 (3d Cir. 1994). For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, the action commences only upon filing of a written consent. Id. § 256(b).

656 F.3d 189, 200 (3d Cir. 2011), *reversed on other grounds by*

27 - OPINION AND ORDER

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).  In *Symczyk*, however, the issue was whether an FLSA collective action became moot when the named plaintiff received a Rule 68 offer in full satisfaction of her individual claim before she moved for conditional certification and before any other plaintiffs had opted-in to the action.  Although Plaintiffs cite a number of other cases from district courts in the Third Circuit, those cases rely on *Symczyk*, do not engage in any analysis of the assertions related to the named plaintiffs in those cases, and involve the issue of equitable tolling.

Plaintiffs also cite a number of cases from courts outside of the Third Circuit, but none of those cases were decided by courts in the Ninth Circuit and some of the cases have been addressed and distinguished by *Frye*.  For example, Plaintiffs rely on *Allen*.  As the Eleventh Circuit noted in *Frye*, however, *Allen* involved plaintiffs who asserted individual claims (which are subject to different FLSA commencement rules) rather than plaintiffs who joined a collective action.  724 F.3d at 1135 ("This suit consists of a number of individual actions, not a collective or class action subject to sections [216(b)] and 256.").  Plaintiffs also rely on *Arias*, but that case did not involve a statute-of-limitations issue under § 256 and the court cited only *Allen* to support its conclusion.

Plaintiffs also rely on *Anderson v. Montgomery Ward &*

*Company, Inc.*, 852 F.2d 1008, 1018-19 (7th Cir. 1988).  *Anderson*, however, was an age-discrimination case rather than an FLSA action.  Although the ADEA incorporates the provisions of § 216(b) as to collective actions, courts have held "[s]ection 256 is not incorporated by reference into the ADEA, and therefore [the commencement of an action only after written consents is not] applicable to age discrimination suits."  *Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir. 1978).

Plaintiffs also rely on *Tate v. Showboat Marina Casino Partnership*, No. 02 C 3432, 2002 WL 31253843 (N.D. Ill. Oct. 8, 2002), in which the court held "[t]he lone exception to [the FLSA written consent] requirement is for the named plaintiff, who need not file a separate signed consent to join the lawsuit that he himself filed."  *Id.*, at *1.  On reconsideration, however, the court significantly revised that holding and concluded "regardless whether signed consents are necessary for named plaintiffs to join a representative action, Section 256 makes clear that even for named plaintiffs signed consents are required to mark the commencement of the action."  *Tate v. Showboat Marina Casino Partnership*, No. 02 C 3432, 2002 WL 31443124, at *6 (N.D. Ill. Oct. 31, 2002).  The court's analysis in the revised *Tate* decision is illuminating:

> The courts have split on the issue whether plaintiffs named in the lawsuit need to file separate signed consents to join the lawsuit. Several courts have suggested that requiring named

> plaintiffs to file a signed consent to join the lawsuit would be redundant. . . .  Other courts have held that the requirement for individual signed consents to joint the lawsuit applies even to named plaintiffs.
>
> The source of the split in authority on this issue may lie with the dual purpose of the signed consent requirement under the FLSA.  One purpose behind the signed consent requirement is to ensure adequate notice to an employer of exactly who is joining a lawsuit against it.  *See Allen*, 724 F.2d at 1134 ("The clear intent . . . was to make the members of the class of unnamed plaintiffs who wished to participate in, and be bound by, the action identify themselves for the benefit of the defendant."); . . . .  But with respect to plaintiffs already named in the lawsuit, filing separate consents obviously would not afford any further notice to an employer.  Thus, as this Court suggested, it would seem anomalous to require a named plaintiff to file a signed consent simply "to join the lawsuit that he himself filed."  *Tate*, 2002 WL 31253843, at *1
>
> The other purpose served by the signed consent requirement is to mark the commencement of the action for purposes of the statute of limitations. This purpose is embodied in Section 256.
>
> * * *
>
> The language of Section 256 is clear:  in a representative action, a plaintiff's case is deemed to have commenced only when his or her own signed consent has been filed. . . .  Thus, regardless whether signed consents are necessary for named plaintiffs to *join* a representative action, Section 256 makes clear that even for named plaintiffs signed consents are required to mark the *commencement* of the action.

*Id.*, at *5-*6 (citations omitted)(emphasis in original).

Accordingly, the court in *Tate* concluded on reconsideration that

written consents by named plaintiffs are required in order for an

FLSA collective action to commence.

Defendant cites a number of cases by district courts in the Ninth Circuit in which courts dismissed FLSA collective-action claims when the named plaintiffs did not file timely written consents.  For example, in *Cancilla v. Ecolab, Inc*., No. C 12-03001 CRB, 2013 WL 1365939 (N.D. Cal. Apr. 3, 2013), the court held an FLSA collective action does not commence until the named plaintiff files a written consent.  *Id*., at *2.  The court granted the defendant's motion for summary judgment and dismissed the FLSA collective action because the plaintiff did not file a written consent within the limitations period, and, therefore, the FLSA collective action did not commence within the limitations period and was barred as untimely.  *Id*., at *4.  The court relied on *Frye* as well as *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).  In *Harkins* the court concluded:

> [I]f you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party.  It makes no difference that you are named in the complaint, for you might have been named without your consent.  The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case. . . .  We are inclined to interpret the statute literally.

385 F.3d at 1101.  *See also Chavez v. Lumber Liquidators, Inc.*, No. C-09-04812 SC, 2011 WL 809453 (N.D. Cal. Mar. 2, 2011)(same).

Defendant also relies on *Ketchum v. City of Vallejo*, in

31 - OPINION AND ORDER

which the court held

> [w]hen a "collective action" is filed under
> § 216(b) all plaintiffs, including named
> plaintiffs are required to file a consent to suit
> form with the court in which the action is
> brought.  A "collective action" is not deemed
> commenced with respect to each individual
> plaintiff until his or her consent has been filed.

523 F. Supp. 2d 1150, 1155 (E.D. Cal. 2007)(citations omitted).

The court cautioned the plaintiffs that "because this action has
yet to be properly commenced, the statute of limitations will
continue to run until Plaintiffs file their consent to suit forms
with this court."  *Id*. at 1159.

Similarly, in *Bonilla v. Las Vegas Cigar Company* the
court held

> [w]hen plaintiffs have filed a "collective
> action," under § 216(b), all plaintiffs, including
> named plaintiffs, must file a consent to suit with
> the court in which the action is brought.
> Although the consents may be filed after the
> complaint, the action is not deemed commenced with
> respect to each individual plaintiff until his or
> her consent has been filed.

61 F. Supp. 2d 1129, 1132-33 (D. Nev. 1999).  The court noted:

> It is indeed redundant and unusual to make
> named plaintiffs file their consents with the
> Court.  Notwithstanding the fact that the
> statutory requirements are repetitive or
> wasteful, they are the unambiguous
> requirements which Congress has duly
> enacted. . . .  It is not for the courts to
> rewrite statutes which they find unwise
> . . . .  Moreover, the requirements are
> hardly onerous or burdensome. All Plaintiffs
> were required to do is file their consents
> with the Court.

32 – OPINION AND ORDER

*Id.* at 1139 (citations omitted).

The court in *Thomas v. Talyst, Inc.*, No. C07-202JLR, 2008 WL 570806 (W.D. Wash. Feb. 28, 2008), agreed with the sentiment expressed in *Bonilla*.  The court noted:

> The requirement to file a consent with the court, or sign the complaint, is hardly onerous or burdensome.  Regardless, wasteful or not, wise or not, it is not for the courts to rewrite unambiguous statutory language.
>
> In *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099 (7th Cir. 2004), the Seventh Circuit reached the same conclusion.  The trial court had dismissed the overtime claims of 18 of the 21 named plaintiffs in a FLSA collective action because no written consents by them to join in the suit had been filed with the court before the statute of limitations expired.  On appeal, plaintiffs' counsel argued that since all 18 were actually named as plaintiffs in the complaint and participated in discovery, their consent to be parties could be presumed such that the failure to file written consents for them was a harmless technicality.  The Seventh Circuit disagreed because "[t]he statute is unambiguous:  if you haven't given your written consent to join the suit, or you have but it hasn't been filed with the court, you're not a party."  *Id.* at 1101.

*Id.*, at *4 (quotations and citations omitted).

This Court finds persuasive the reasoning of the cases cited by Defendant.  In particular, the Court agrees with the analysis in the revised *Tate* decision and, therefore, adopts the reasoning of that court.  Thus, the Court concludes the language of § 256 is clear:  In a representative action a plaintiff's case is deemed to have commenced only when his or her written consent

has been filed.  Named plaintiffs, therefore, are required to file written consents with the court to *commence* an FLSA collective action even if written consents are not necessary for named plaintiffs to *join* a collective action.

Accordingly, the Court concludes Plaintiffs were required to file written consents with this Court to commence their FLSA collective-action claims, and those claims did not commence until such consents were filed in September 2013.

**B.    Plaintiffs have not established they brought this action in a dual capacity.**

Plaintiffs argue even if written consents were required to commence their FLSA collective-action claims, Plaintiffs filed their FLSA claims in a dual capacity (*i.e.*, they filed as individuals and as collective representatives).  Because written consents by named plaintiffs are not required to commence FLSA individual claims, Plaintiffs maintain their claims brought in their individual capacity are still viable.

Defendant asserts Plaintiffs did not make any suggestion in any of their Complaints or briefings on certification that they were proceeding in dual or individual capacities until after May 2013 when Defendant asserted Plaintiffs failed to file timely written consents.  Defendant notes Plaintiffs in each of their Complaints have stated in the caption that the action is a "Collective and Class Allegation Complaint."  In addition, although all of Plaintiffs' Complaints

34 - OPINION AND ORDER

purport to be brought by named Plaintiffs "suing on behalf of themselves and all others similarly situated," none of the Complaints have clearly set out individualized claims. Instead all of Plaintiffs' claims have been styled as "Collective and Class Allegation[s]." Although Plaintiffs assert in their Response to Defendant's Motion that the "common facts" sections of their Complaints have reflected an individualized intent, Plaintiffs, nevertheless, state in their introduction to the "common facts" section of the Second Amended Complaint that "Plaintiffs base this collective and class action on three categories of violations." Second Am. Compl. at ¶ 6. Moreover, as Defendant notes, Plaintiffs did not state in their briefs related to the issue of class certification that they intended to proceed on an individual or dual-capacity basis.

In Plaintiffs' initial Complaint they did not seek relief for themselves, but instead for all members of the class:

> Plaintiffs request that the Court award such damages as set forth above and in amounts to be proven at trial; award the attorney fees, costs and expenses of suit of Plaintiffs and the other Collective and Class members; order Defendant to pay pre-judgment and post-judgment interest on all amounts due to Plaintiffs and the other Class members as a result of their state law claims; enter an order enjoining Defendant from committing similar violations in future; and order such further or alternative relief as the Court deems appropriate.

Compl. at 20. Plaintiffs also titled their initial Complaint as "Collective and Class Allegation Complaint." Each of the claims

35 - OPINION AND ORDER

in Plaintiffs' initial Complaint contained an allegation that
Plaintiffs and the "collective members" are entitled to recovery.
As noted, Plaintiffs' First Amended Complaint is titled a
"Collective and Class Allegation Complaint."  Each of the FLSA
allegations in Plaintiffs' First Amended Complaint contains an
assertion that only the "[c]ollective members" are entitled to
relief.  Finally, the requests for relief remain the same as
those in Plaintiffs' initial Complaint and those requests for
relief are on a class-wide basis rather than on an individual
basis.

        Plaintiffs' Second Amended Complaint also is titled a
"Collective and Class Allegation Complaint," and its allegations
contain either an assertion that only the "Collective members"
are entitled to relief or that "Plaintiffs and the FLSA . . .
Collective members" are entitled to relief.  Finally, the
requests for relief in Plaintiffs' Second Amended Complaint
remain the same as that in the first two Complaints, and those
requests are also on a class-wide basis rather than on an
individual basis.

        In other district court cases in the Ninth Circuit,
courts have concluded similar allegations did not indicate an
action was brought in a dual capacity.  For example, in *Bonilla*
the court noted:

                Plaintiffs' Complaint uses the language "and other
                employees of Las Vegas Cigar Company similarly

36 - OPINION AND ORDER

situated" nine times in a four-page complaint.
The phrase is used in the caption, and in three
different paragraphs of the Complaint.  Most
importantly, and unlike the situation in *Allen*,
Plaintiffs seek recovery not only for themselves,
but for others similarly situated in their prayer
for relief.  *Gray*, 436 F.2d at 655 (finding no
collective action where action not brought for
benefit of unnamed plaintiffs, or in name of
plaintiff suing in representative capacity).

61 F. Supp. 2d at 1139 (citation omitted).  Similarly, in *Thomas*

the court concluded the plaintiff "never made his intention known

to convert his collective action for overtime pay into an

individual action until the three-year statute of limitations for

willful FLSA violations expired."  2008 WL 570806, at *4.  The

court noted:

There is no question that Mr. Thomas intended for
this case to proceed as a FLSA collective action.
Mr. Thomas filed his complaint, entitled "FLSA
Collective Action," on "behalf of himself and
other employees and former employees similarly
situated to him for overtime compensation and
other relief under the FLSA."  Complaint (Dkt. #1)
¶ 2.  The complaint contains a "Class Facts"
section and alleges that "Defendant violated the
overtime provisions of the FLSA . . . by
directing, suffering or permitting work by class
members in excess of 40 hours per week for which
they were not paid overtime," and that
"Defendant's violations were willful, thereby
entitling plaintiff and members of the proposed
class to a three-year statute of limitations."
*Id*. ¶¶ 8-12, 14-15.  "[I]ndividually and on behalf
of the class," Mr. Thomas sought three forms of
relief:  (1) "Court-approved notices to putative
class members pursuant to 29 U.S.C. § 216(b);"
(2) "Certification of a collective action pursuant
to 29 U.S.C. § 216(b);" and (3) overtime and other
damages.  *Id*. at 3. . . .  He asserted a wholly
individual FLSA action for the first time in
response to Talyst's motion for summary judgment

and, even then, the captions on his papers read
"FLSA Class Action."

*Id.*, at *2.

In *Faust v. Comcast Cable Communications Management,
LLC*, cited by Plaintiffs, the court concluded the plaintiffs did
not provide sufficient notice that it was a dual-capacity FLSA
action when

> Plaintiffs' Complaint . . . states that it is
> filed by Plaintiffs Faust and Feldman
> "Individually, and on Behalf of All Others
> Similarly Situated."  ECF No. 1 at 1.  The
> allegations of the Complaint, however, contain no
> reference to an individual capacity action.
> Rather, the Complaint states that "Plaintiffs
> bring their FLSA overtime claims as a collective
> action pursuant to 29 U.S.C. § 216(b)." . . .
> Further, Count I, the only count to allege a
> violation of the FLSA, is captioned specifically
> as a collective action.  To the extent that the
> allegations under Count I refer to individuals,
> they appear to refer to the potential opt-in
> plaintiffs, rather than Faust and Feldman in their
> individual capacities.  Moreover, although
> Plaintiffs repeated the phrase "individually and
> on behalf of all others similarly situated" in
> multiple court filings, never did Plaintiffs
> assert, in any other manner, their intention to
> proceed by way of anything other than a collective
> action.  A mere recitation in pleadings of the
> phrase "individually and on behalf of all others
> similarly situated," absent any further indication
> in the Complaint or subsequent filings of an
> intention to proceed in a dual capacity, is not
> sufficient to put the employer and the Court on
> notice of an individually-filed action.

No. WMN-10-2336, 2013 WL 5587291, at *8 (D. Md. Oct. 9, 2013).

The Court concludes Plaintiffs, like the plaintiffs in
*Bonilla, Thomas,* and *Faust,* have not established they brought

38 - OPINION AND ORDER

FLSA claims in an individual, a dual capacity, or any other way
than as an FLSA collective action.

**C.    Constructive notice is insufficient under the FLSA.**

Finally, Plaintiffs assert even though they did not
file written consents with the Court until September 2013, they
gave Defendant constructive notice of their FLSA claims and of
this action, which Plaintiffs contend should be sufficient to
satisfy the written-consent requirement.  Specifically,
Plaintiffs rely on letters signed by Jon Egan, Plaintiffs'
counsel, and sent to Defendant in May 2010.  In those letters
Egan provided Defendant with "ORS 652.150 written notice of
nonpayment and ORS 652.200 written notice of a wage claim and
demand that you pay my client the" wages due and owing.  *See,*
*e.g.,* Docket # 187, Ex. 1 at 1.  Attached to those letters were
Plaintiffs' signed Authorization[s] for the Release of Personnel
Records.

It is questionable whether Plaintiffs' signed
authorizations for the release of their personnel records in
connection with state-law wage claims are sufficient to
constitute the required written consents to become a party to an
FLSA collective action because there is not any indication in
those documents of any FLSA claims.  As noted, those letters
referenced only state wage-and-hour claims.  In addition to the
forms signed by Plaintiffs, there were authorizations for

39 - OPINION AND ORDER

Defendant to release Plaintiffs' personnel records without any statement that Plaintiffs were bringing or joining in an FLSA collective action.

Moreover, even if Plaintiffs' authorizations for Defendant to release their personnel records were construed as written consents under the FLSA, Plaintiffs did not file the authorizations with the Court until May 31, 2013, which is more than three years after the final paycheck of the last named Plaintiff to receive a paycheck (Christina Luchau) and well over three years after the final paychecks of the other named Plaintiffs.

Finally, even if the May 2010 authorization forms signed by the named Plaintiffs constituted written consent and were filed with the Court within three years of their final paychecks, several courts have rejected the argument that constructive notice of an FLSA collective action is sufficient to satisfy the written-consent requirement.  For example, in *Harkins v. Riverboat Services, Inc.*, the Seventh Circuit concluded:

> In a collective (or, as it is sometimes called, a representative) action under the FLSA, . . . . [n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). . . .  The plaintiffs' counsel asks us to overlook the failure to comply with the statute.  He argues that since all 18 were actually named as plaintiffs in the complaint and participated in discovery, their consent to be parties can be presumed and so the failure to file

40 - OPINION AND ORDER

written consents for them was harmless, a mere
failure to comply with a technicality.

The statute is unambiguous:  if you haven't given
your written consent to join the suit, or if you
have but it hasn't been filed with the court,
you're not a party.  It makes no difference that
you are named in the complaint, for you might have
been named without your consent. . . .  We are
inclined to interpret the statute literally.  No
appellate decision does otherwise.

385 F.3d at 1101.  As noted, in *Bonilla* the court stated

[i]t is indeed redundant and unusual to make named
plaintiffs file their consents with the Court.
Notwithstanding the fact that the statutory
requirements are repetitive or wasteful, they are
the unambiguous requirements which Congress has
duly enacted. . . .  It is not for the courts to
rewrite statutes which they find unwise.

61 F. Supp. 2d at 1139.  Similarly, in *Thomas* the court noted

"[t]he requirement to file a consent with the court, or sign the

complaint, is hardly onerous or burdensome.  Regardless, wasteful

or not, wise or not, it is not for the courts to rewrite

unambiguous statutory language."  2008 WL 570806, at *4.

The Court agrees with the analysis in *Bonilla, Thomas*,

and *Harkins* and concludes the language of § 216(b) and § 256 is

unambiguous:  An FLSA collective action does not commence until

the plaintiffs give written consent and those written consents

are filed with the Court.  Perhaps the written consent

requirement is repetitive as other courts have noted, but it is

unambiguously required by the FLSA to commence a collective

action.

41 - OPINION AND ORDER

In summary, on this record the Court concludes Plaintiffs failed to file the required written consents with the Court within the limitations period, and, therefore, their FLSA collective action was not commenced within the limitations period.  Accordingly, unless equitable tolling or estoppel applies, Plaintiffs' FLSA action is time-barred.

**VI.    Equitable Considerations.**

Plaintiffs contend even if they were required to file written consents to commence their FLSA action, "equitable considerations" should toll the limitations period.  Plaintiffs assert in their Response that

> [v]arious equitable exceptions to the statute of limitations have been called different names by different courts according to the particular facts of the cases in which they were applied, such as (*inter alia*) waiver, estoppel, tolling, fraudulent concealment, continuous accrual, continuing violation, laches, unclean hands, *in pari delicto*, and the discovery rule.

Resp. at 20.  At oral argument, however, Plaintiff agreed the Ninth Circuit applies only two equitable doctrines to toll the FLSA limitations period:  (1) equitable tolling and (2) equitable estoppel.  *See  Stattcop v. Kaiser Found. Hosp.*, 820 F.2d 1044 (9th Cir. 1987).

**A.    Equitable Tolling.**

"Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights." *Smith v. Bimbo Bakeries USA, Inc.*, No. CV 12-1689-CAS (JWX), 2013

42 - OPINION AND ORDER

WL 4479294, at *5 n.3 (C.D. Cal. Aug. 19, 2013)(quotation

omitted).  In *Kwai Fun Wong v. Beebe* the Ninth Circuit explained:

> [L]ong-settled equitable-tolling principles
> instruct that generally, a litigant seeking
> equitable tolling bears the burden of establishing
> two elements:  (1) that he has been pursuing his
> rights diligently, and (2) that some extraordinary
> circumstances stood in his way.  As to the first
> element, the standard for reasonable diligence
> does not require an overzealous or extreme pursuit
> of any and every avenue of relief.  It requires
> the effort that a reasonable person might be
> expected to deliver under his or her particular
> circumstances.  Central to the analysis is whether
> the plaintiff was without any fault in pursuing
> his claim.
>
> With regard to the second showing, "a garden
> variety claim of excusable neglect, such as a
> simple miscalculation that leads a lawyer to miss
> a filing deadline, does not warrant equitable
> tolling." *Holland,* 130 S. Ct. at 2564 (internal
> quotation marks and citations omitted).  Instead,
> a litigant must show that extraordinary
> circumstances were the cause of his untimeliness
> and . . . made it impossible to file the document
> on time.  Accordingly, equitable tolling is
> typically granted when litigants are unable to
> file timely documents as a result of external
> circumstances beyond their direct control.

732 F.3d 1030, 1052 (9th Cir. 2013)(quotations and citations

omitted).

        Plaintiffs assert Defendant failed to allege specific

underlying facts to support its statute-of-limitations defense,

and, therefore, Defendant either waived the defense or misled

Plaintiffs as to the nature of the defense.  The record, however,

reflects Defendant asserted the statue-of-limitations defense

early and continued to assert it at various times throughout this

litigation.  Magistrate Judge Stewart noted at the May 22, 2012,
hearing:  "I think what is going to happen in this case is at
some point, if the defendant decides that it has, for example, a
valid statute of limitations defense with a particular class
member with respect to a particular claim, they're going to have
to seek leave of court to amend and add that affirmative defense
with specific factual allegations to go forward."  At that
hearing defense counsel specifically requested the limitations
defense be dismissed without prejudice, which is an indication
that at some point Defendant believed there would be a factual
basis for the defense and Defendant wanted to preserve it.  The
Magistrate Judge granted that request.  At oral argument on
Defendant's Motion for Summary Judgment before this Court,
defense counsel represented to the Court that Defendant was not
"looking at" the written-consent issue before May 2012.  Tr. 98.
Counsel also represented to the Court that in the fall of 2011 or
before May 2012 Defendant "didn't know if [it] had any statute of
limitations facts."  Tr. 100.

        As the court noted in *Faust*, "the defendant 'ha[s] no
duty to inform' the plaintiff of his or her failure to file a
written consent to join the collective action, 'or to assert that
he [or she] was required to do so [prior to the running of the
limitations period].'"  2013 WL 5587291, at *4 (quoting *Frye v.
Baptist Memorial Hosp., Inc*., No. 07-2708, 2011 WL 1595458, at *8

44 - OPINION AND ORDER

(W.D. Tenn. Apr. 27, 2011)).

On this record the Court concludes Plaintiffs have not established Defendant waived the limitations defense or that extraordinary circumstances were the cause of Plaintiffs' untimely filing of written consents.

**B.    Equitable Tolling Based on Plaintiffs' Ignorance.**

Plaintiffs also argue for equitable estoppel or tolling on the ground that "Plaintiffs are faultless." Specifically, Plaintiffs assert they were ignorant of the law because they are not attorneys. Plaintiffs, however, have been represented by counsel since at least May 2010 when Egan sent the Oregon wage-and-hour demand letters to Defendant on behalf of Plaintiffs.

The Ninth Circuit has explained:

> The doctrine of equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Leorna*, 105 F.3d at 551. "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations . . . until the plaintiff can gather what information he needs."
>
> * * *
>
> However, "once a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Leorna*, 105 F.3d at 551.

*Leong*, 347 F.3d at 1123. *See also Syntrix Biosystems, Inc. v.*

45 - OPINION AND ORDER

*Illumina, Inc*., No. C10–5870 BHS, 2013 WL 364722, at *4 (W.D.
Wash. Jan. 30, 2013)("Equitable tolling focuses on a plaintiff's
excusable ignorance and lack of prejudice to the defendant.
However, once a claimant retains counsel, tolling ceases because
she has gained the means of knowledge of her rights and can be
charged with constructive knowledge of the law's requirements"
(quotations omitted)).

On this record the Court concludes Plaintiffs' personal
lack of legal knowledge cannot support equitable tolling because
Plaintiffs were represented by counsel well before the statute of
limitations passed, and, therefore, Plaintiffs are charged with
constructive knowledge of the FLSA's written-consent requirements
and statute of limitations.

**C.    Equitable Tolling Based on FLSA Posters.**

Plaintiffs also assert the statute of limitations
should be equitably tolled because Defendant did not post "the
mandatory FLSA posters in any of its Oregon stores during the
time that Plaintiffs worked there."  Based on a number of cases
from other districts, Plaintiffs assert Defendant's failure to
display posters advising employees of their FLSA rights tolls the
running of any limitations period.  The cases on which Plaintiffs
rely, however, all involve unrepresented plaintiffs who were
unaware of their rights under the FLSA due to their employers'
alleged failure to put up the posters and whose claims became

46 - OPINION AND ORDER

untimely before the plaintiffs retained counsel.

Here it is undisputed that Plaintiffs last worked at
Defendant's restaurants no later than the following dates:
Tricia Tetrault, July 11, 2008; Ashley Gessele December 26, 2008;
Nicole Gessele, March 20, 2009; Jessica Gessele, November 23,
2009; and Christina Luchau, March 30, 2010.  The record also
reflects each of these Plaintiffs was represented by counsel no
later than May 2010 (*i.e.*, at the time that Egan sent Defendant
the demand for wages pursuant to Oregon's wage-and-hour laws).
Because they were represented, Plaintiffs had constructive
knowledge of the FLSA limitations period and written-consent
requirement no later than May 2010.

As one court explained:

> [T]he Court assumes that the failure to post
> [FLSA] notice[s], in other circumstances, might
> result in equitable tolling.  But not here.
>
> In this case, plaintiff retained an attorney in
> the spring of 1998 to advise him regarding his
> proposed employment contract with defendants which
> included, among other things, his post - July 1,
> 1998 compensation.  Once he did so, any failure to
> post the required notice became immaterial.  This
> is no more than a common sense application of the
> basic principles that equitable tolling is
> reserved for situations in which "a plaintiff has
> been 'prevented in some extraordinary way from
> exercising his rights'" and that it is available
> "only so long as the plaintiff has exercised
> reasonable care and diligence."  Once the
> plaintiff hired a lawyer to advise him concerning
> his employment situation, the means of knowledge
> of his rights were at his disposal. . . .  The
> FLSA claim therefore will be dismissed.

47 - OPINION AND ORDER

*Patraker v. Council on Env't of New York City*, 2003 WL 22703522,
at *2 (S.D.N.Y. Nov. 17, 2003)(citations omitted).  *See also*
*Stallcop v. Kaiser Founds. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.
1987)(court concluded equitable tolling did not apply when the
plaintiff consulted counsel before the limitations period
expired).

      The Court concludes on this record that Plaintiffs have
not established any basis for equitable tolling arising from the
alleged failure of Defendant to put up posters at Plaintiffs'
work.

**D.    Equitable Tolling Related to Efforts to Discover the
       Limitations Defense.**

      As noted, Plaintiffs contend they should be excused
from the limitations period because Egan sought to ascertain the
basis for Defendant's limitations defense, but the underlying
factual basis for the defense was not disclosed until May 2013.
Plaintiffs rely on *Adams v. Inter-Con Sec. Systems, Inc.*, 242
F.R.D. 530 (N.D. Cal. 2007), in which the court concluded
equitable tolling was appropriate because the defendant's
misconduct induced the plaintiff's failure to meet the written-
consent deadline.  Specifically, the defendant refused to provide
the potential class-plaintiffs' contact information to the named
plaintiffs.  *Id.* at 543.  *Adams*, however, is distinguishable.
Here Defendant did not withhold any information that was
otherwise unavailable to Plaintiffs' counsel.  In fact,

48 - OPINION AND ORDER

Plaintiffs were aware or through counsel should have been aware of (1) their final pay dates, (2) the applicable limitations period, and (3) the written-consent requirement.  As Magistrate Judge Stewart noted, the lack of any written consents filed in this matter "was just as apparent to plaintiffs.  Plaintiffs could have filed their individual opt-in consent forms with (or at any time after) the filing of their Complaint."

The Court concludes Plaintiffs have not established any basis for equitable tolling of the limitations period related to their efforts to discover Defendant's factual basis for the limitations defense.

**E.    Equitable tolling by Magistrate Judge Stewart.**

Plaintiffs also assert the limitations period was equitably tolled by Magistrate Judge Stewart on December 14, 2011, and, therefore, Plaintiffs' written consents were not untimely.  The transcript of the December 14, 2011, hearing before Magistrate Judge Stewart, Tr. (#148) at 54, and in the subsequent Order (#59) she issued, however, make clear that Magistrate Judge Stewart tolled the limitations period only "for absent putative collective class members."  The Magistrate Judge's Order, therefore, did not apply to named Plaintiffs, who were not "absent" from this matter as of December 14, 2011.

The Court, therefore, concludes Magistrate Judge Stewart did not toll the limitations period for Plaintiffs, and

49 - OPINION AND ORDER

her December 14, 2011, Order does not equitably toll the

limitations period for the named Plaintiffs.

    **F.    Equitable Estoppel**.

       The Ninth Circuit explained in *Estate of Amaro v. City*

*of Oakland*:

> [T]his court has held that equitable estoppel
> applies to bar a statute of limitations defense
> "when a plaintiff who knows of his cause of action
> reasonably relies on the defendant's statements or
> conduct in failing to bring suit." *Stitt v.*
> *Williams*, 919 F.2d 516, 522 (9th Cir. 1990)
> (emphasis added).  Therefore, the focus of the
> equitable estoppel analysis is not whether the
> plaintiff knew she had a cause of action - or even
> pursued some other form of litigation based on
> that knowledge - but whether the defendant's
> fraudulent concealment or misrepresentation
> deprived the plaintiff of a full understanding of
> the true facts, and thus, dissuaded the plaintiff
> from filing the claim at issue within the
> limitations period.

653 F.3d 808, 813 (9th Cir. 2011).

> To determine whether equitable estoppel applies,
> courts consider several factors, "such as whether
> the plaintiff actually relied on the defendant's
> representations, whether such reliance was
> reasonable, whether there is evidence that the
> defendant's purpose was improper, whether the
> defendant had actual or constructive knowledge
> that its conduct was deceptive, and whether the
> purposes of the statute of limitations have been
> satisfied." *Id.* (citing Santa Maria v. Pacific
> Bell, 202 F.3d 1170, 1177 (9th Cir. 2000)).

*Tompkins v. Union Pac. R. Co.*, No. 2:12-cv-01481 JAM-GGH, 2013 WL

904897, at *3 (E.D. Cal. Mar. 8, 2013).

       Plaintiffs assert they did not know the basis for

Defendant's statute-of-limitations defense until the Defendant

50 - OPINION AND ORDER

filed its Motion to Amend its Answer on May 7, 2013, which was after the limitations period had passed.  Plaintiffs, however, do not assert that not knowing the basis for Defendant's limitations defense prevented Plaintiffs from filing their written consents.[4]

The cases on which Plaintiffs rely for the application of equitable estoppel are distinguishable because in those cases specific actions by the defendant caused the plaintiff's failure to act.  For example, in *Westinghouse Elec. v. James Stewart, Co.*, 336 F.2d 777 (9th Cir. 1964), a supplier promised to tell the general contractor if the subcontractor failed to pay.  When the supplier failed to do so, the court held whether the supplier might be estopped from proceeding against the general contractor was a question for the jury.  In *M.N.O. v. Magana*, 2006 WL 559214 (D. Or. March 6, 2006), physical threats by persons in authority positions discouraged the plaintiff from coming forward.

Here Defendant did not promise or suggest it would advise Plaintiffs about its defensive intentions or that it would not pursue the limitations defense.  To the contrary, at the May 22, 2012, hearing before Judge Stewart, defense counsel clearly stated Defendant wanted to preserve the ability to assert the limitations defense against the named Plaintiffs at a later date

---

[4] To the extent that Plaintiffs assert they did not file their written consents because Defendant waived the limitations defense, the Court has rejected Plaintiffs' waiver argument as noted in its analysis of equitable tolling.

and requested the court to dismiss that (insufficiently pleaded) defense without prejudice for that reason.  The Magistrate Judge did so.  Thus, Plaintiffs have failed to establish any facts from which the Court could find Defendant had a duty to advise Plaintiffs of the written-consent requirement.  Plaintiffs also failed to show that any action by Defendant misled Plaintiffs as to Plaintiffs' final pay date, the FLSA's statute of limitations, the written-consent requirement, or Defendant's intent to assert a limitations defense.

Plaintiffs also assert Defendant attempted to "run out the clock" in this action by extending matters until the March 31, 2013, limitations deadline had passed.  The record, however, reflects Plaintiffs' decision to engage in extensive pre-certification discovery and in a class- certification process involving two theories under Federal Rule of Civil Procedure 23 and the FLSA collective action itself extended the litigation during this same time.  The Court does not find any evidence that Defendant deliberately delayed these proceedings for this purpose at any stage.

Finally, although, as Plaintiffs point out, equitable estoppel and tolling issues are often questions for the jury, such matters may be decided by the Court when the factual context makes those claims implausible to a degree that no reasonable juror could conclude estoppel was warranted.  *See, e.g., Cal.*

*Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987); *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2003).

Here the Court finds the factual context of Plaintiffs' equitable tolling and estoppel claims makes them implausible primarily because Defendant had no duty to inform Plaintiffs' counsel of the statute-of-limitations requirement under these circumstances.  Thus, the Court concludes as a matter of law that equitable tolling and equitable estoppel do not apply to the statute of limitations in this matter.

In summary, the Court concludes Plaintiffs were required to file written consents with the Court to commence their FLSA collective action; Plaintiffs did not file written consents until after the applicable limitations period; Plaintiffs' FLSA collective-action claims, therefore, are untimely; and neither equitable tolling nor equitable estoppel apply.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' FLSA claims.  Because the Court has concluded Plaintiffs brought only FLSA collective-action claims and because Plaintiffs' FLSA collective-action claims are barred by the statute of limitations, the Court dismisses Plaintiffs' FLSA claims with prejudice.

**VII. Plaintiffs' State-Law Claims.**

Plaintiffs also bring wage-and-hour claims under state law.

The sole basis for this Court's jurisdiction asserted by Plaintiffs, however, was federal-question jurisdiction arising from Plaintiffs' FLSA claims.

Defendant points out that the Court may exercise supplemental jurisdiction only when the Court first has original jurisdiction. *See Hunter v. United Van Lines*, 746 F.2d 635, 649 (9th Cir. 1984)("[I]t makes no sense to speak of [supplemental] jurisdiction until after a court has independently acquired jurisdiction over a federal cause of action."). Because Plaintiffs' federal claims never "commenced" under the FLSA, Defendant asserts this Court has never properly had original jurisdiction over those claims, and, therefore, the Court cannot exercise supplemental jurisdiction over Plaintiffs' state-law claims. *See Herman Family Rev. Trust v. Teddy Bear* , 254 F.3d 802, 806 (9th Cir. 2001)(supplemental jurisdiction may only be invoked after a court has established original jurisdiction). *See also Orozco v. Borenstein* , 2012 U.S. Dist. LEXIS 122642 (D. Ariz. Aug. 28, 2012)("Because we have dismissed the federal claim as moot, we have no original jurisdiction upon which supplemental jurisdiction could attach. Accordingly, the state law claims are also dismissed.").

The Court agrees. Because the Court never had original jurisdiction over the federal claims in this matter, it cannot exercise supplemental jurisdiction over Plaintiffs' state-law

54 - OPINION AND ORDER

claims.   Accordingly, the Court grants Defendant's Motion for
Summary Judgment as to Plaintiffs' state-law claims and dismisses
without prejudice Plaintiffs' state-law claims for lack of
jurisdiction.


## PLAINTIFFS' MOTION (#276) TO STRIKE

Plaintiffs move to strike the Declarations of Lee Estes,
Alison Layfield, Wendy Sanderlin, and Douglas Parker filed by
Defendant in support of its Reply to its Motion for Summary
Judgment.

In its Response to Plaintiffs' Motion to Strike, Defendant
withdraws the Declarations of Lee Estes, Alison Layfield, and
Wendy Sanderlin.  The Parker Declaration contains excerpts of
Plaintiffs' deposition testimony and signature pages of
Plaintiffs' Declarations.  Because the Court did not rely on the
evidence in the Parker Declaration in deciding Defendant's Motion
for Summary Judgment, the Court denies as moot Plaintiffs' Motion
to Strike.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion
(#174) for Summary Judgment, **DENIES as moot** Plaintiffs' Motion
(#276) to Strike, **DISMISSES with prejudice** Plaintiffs' FLSA
claims**, DISMISSES without prejudice** Plaintiffs' state-law claims,

55 - OPINION AND ORDER

and **DENIES as moot** all other pending Motions.

IT IS SO ORDERED.

DATED this 19th day of March, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

56 – OPINION AND ORDER